LIU, J.,
Concurring. — The court holds that when a trial court errs in completely denying a mentally disordered offender (MDO) the right to a jury trial under Penal Code section 2972, subdivision (a), the error requires automatic reversal. (Maj. opn., ante, at p. 1136.) In a companion case filed today, we adopt the same reversal rule when a trial court errs in denying a defendant found not guilty by reason of insanity (NGI) the right to a jury trial under Penal Code section 1026.5, subdivision (b). (People v. Tran (2015) 61 Cal.4th 1160, 1163 [191 Cal.Rptr.3d 251, 354 P.3d 148] (Tran).)
The Chief Justice dissents from these holdings, observing that “as a general matter” article VI, section 13 of the California Constitution (section 13) as *1138 interpreted in People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (Watson) authorizes reversal of a judgment only upon a finding of prejudice. (Cone. & dis. opn., post, at p. 1146; see Tran, supra, 61 Cal.4th at p. 1173 (cone. & dis. opn. of Cantil-Sakauye, C. J.).) Of course, the qualifier is all-important here. The court’s opinions today do not dispute that the Watson standard applies as a general matter, they instead conclude that the erroneous denial of a jury trial in an MDO or NGI commitment extension proceeding falls outside the general rule. To provide further context for today’s opinions, and because the applicability of harmless error doctrine is a recurring issue in appellate adjudication, I briefly review the text, history, and purpose of section 13.
Section 13 says: “No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.” The text does not say an appellate court may reverse a judgment only when an error affected the outcome. Instead, the text says a judgment may not be reversed unless an error resulted in a “miscarriage of justice.” (§ 13.) To the extent that the conception of justice embodied in our state Constitution encompasses concerns beyond the outcomes of cases, section 13 contemplates that some errors are reversible on grounds other than their likely effect on the outcome of a particular case.
The legislative history of section 13 confirms the meaning that the text implies. Section 13 was adopted in 1966 as part of a general reorganization of the California Constitution. It derives from former article VI, section 4 1/2 (former section 4 1/2), which was added to the California Constitution in 1911 when the voters approved Senate Constitutional Amendment No. 26. Before the addition of former section 4 1/2, appellate courts had restricted their role to reviewing pure questions of law. They did not review the facts underlying judgments to determine whether they supported a conviction in spite of an error at trial. (Ballot Pamp., Special Elec. (Oct. 10, 1911) argument in favor of Sen. Const. Amend. No. 26, p. 12 (1911 Ballot Pamphlet).) Consequently, most trial errors were reviewed under the functional equivalent of an automatic reversal rule. The addition of former section 4 1/2 to the California Constitution changed the role of appellate courts by requiring review of “the entire cause including the evidence” and permitting reversal only after finding a “miscarriage of justice.”
In the 1911 Ballot Pamphlet, the proposed amendment’s sponsor, Senator Boynton, said: “The object of this amendment is to enable our courts of last *1139 resort to sustain verdicts in criminal cases unless there has been a miscarriage of justice, or, putting it in another way, its purpose is to render it unnecessary for the higher courts to grant the defendant in a criminal case a new trial for unimportant errors. It is designed to meet the ground of common complaint that criminals escape justice through technicalities.” (1911 Ballot Pamp., supra, argument in favor of Sen. Const. Amend. No. 26, p. 11.) Senator Boynton then provided the following examples of the “absurd lengths” to which courts had gone in reversing “immaterial errors”: “In Missouri a case was reversed and the prisoner escaped conviction because the indictment alleged the deceased ‘instantly died’ instead of charging according to the ancient formula that he ‘did then and there die.’ In a Texas case the elimination of the letter ‘r’ from the word ‘first’ saved a murderer from the gallows, when his guilt was absolutely determined. In our own state a conviction for murder was set aside because the indictment failed to state that the man killed was a human being.” (Id. at p. 12.) These comments, which were provided to the voters before they ratified the proposed amendment, suggest that the enactment of former section 4 1/2 was directed at trivial errors and was not meant or understood to provide that only an error affecting the outcome of a trial would qualify as a miscarriage of justice.
Shortly after the enactment of former section 4 1/2, our decision in People v. O’Bryan (1913) 165 Cal. 55 [130 P. 1042] (O’Bryan) explained how it had altered the California Constitution. O’Bryan concluded that the trial court had violated the defendant’s state constitutional right not to be compelled to be a witness against himself. We then considered whether the conviction should be reversed, noting that “[t]his question must be answered with due regard to the terms of section 4 1/2 of article YI, added to the constitution by amendment adopted in 1911.” (165 Cal. at p. 63.) After explaining the legal background against which the voters adopted former section 4 1/2, we said that former section 4 1/2 “must be given at least the effect of abrogating the old rule that prejudice is presumed from any error of law.” (165 Cal. at p. 65.)
Importantly, we continued: “When we speak of administering ‘justice’ in criminal cases, under the English or American system of procedure, we mean something more than merely ascertaining whether an accused is or is not guilty. It is an essential part of justice that the question of guilt or innocence shall be determined by an orderly legal procedure, in which the substantial rights belonging to defendants shall be respected. For example, if a court should undertake to deny to a defendant charged with a felony the right of trial by jury, and after a hearing of the evidence render a judgment of conviction, it cannot be doubted that such judgment should be set aside even though there had been the clearest proof of guilt. . . . [I]t would hardly be suggested that because he was in fact guilty, no ‘miscarriage of justice’ had occurred.” (O’Bryan, supra, 165 Cal. at pp. 65-66.) As O’Bryan makes clear, the contemporaneous understanding of former section 4 1/2 was that certain *1140 types of error would result in a miscarriage of justice even when the evidence convincingly established the reliability of the outcome of the case. And one example of such error was the complete denial of a jury trial on a felony charge.
In 1914, the voters approved Senate Constitutional Amendment No. 12, which amended former section 4 1/2 by extending the “miscarriage of justice” standard to civil cases. The amendment did not call into question our construction of that provision in O’Bryan. Indeed, as with Senate Constitutional Amendment No. 26, the sponsor of the 1914 amendment, Senator Boynton, explained that it “is designed to prevent the reversal of civil cases by courts of appeal on purely technical grounds. [¶] .... [¶] ... In scores of cases appellate judges have reluctantly set aside meritorious decisions on no other grounds than that during a long and heated trial, counsel for the successful party committed some technical breach of legal procedure.” (Ballot Pamp., Gen. Elec. (Nov. 3, 1914) arguments in favor of Sen. Const. Amend. No. 12, p. 4.)
Our case law has consistently treated O’Bryan as the seminal authority on the meaning of former section 4 1/2. (See, e.g., People v. Collins (1976) 17 Cal.3d 687, 697-698, fn. 5 [131 Cal.Rptr. 782, 552 P.2d 742]; People v. Sarazzawski (1945) 27 Cal.2d 7, 11 [161 P.2d 934]; Vallejo etc. R. R. Co. v. Reed Orchard Co. (1915) 169 Cal. 545, 553-554 [147 P. 238]; People v. Fleming (1913) 166 Cal. 357, 381 [136 P. 291].) Most notable is our discussion of O’Bryan in our frequently cited Watson decision. In that case, the defendant wore his Army uniform during trial. During cross-examination of the defendant, the prosecution pursued a line of questioning intended to show that he had taken gymnasium classes to “stretch his height beyond the 6 feet 6 inch limit fixed by the Army ... so he could be discharged from further Army service.” (Watson, supra, 46 Cal.2d at p. 833.) The prosecution argued that the defendant was wearing his Army uniform in court to gain sympathy and respect for his patriotic service, and the inquiry would serve to rebut this effect. We held that the trial court erred by improperly overruling an objection to the prosecution’s line of questioning. (Id. at pp. 833-834.)
We then addressed whether the error constituted a “miscarriage of justice” under former section 4 1/2. Summarizing O’Bryan, we said that “generally” a showing of prejudice is required for reversal and that “ordinarily where the result appears just, and it further appears that such result would have been reached if the error had not been committed, a reversal will not be ordered.” (Watson, supra, 46 Cal.2d at p. 835, italics added.) At the same time, we said that “certain fundamental rights, however, are guaranteed to the defendant upon which he can insist regardless of the state of the evidence, such as the right to a jury trial,” and that “the distinction between reversible and *1141 non-reversible error does not rest upon the distinction between error relating to constitutional rights as contrasted with other rights, but that the section applies to both.” (Ibid.)
Regarding the category of errors that do not automatically establish a miscarriage of justice, we explained that our previous opinions had used various formulations to articulate the meaning of “ ‘miscarriage of justice.’ ” (Watson, supra, 46 Cal.2d at pp. 835-836.) Surveying these various formulations, we concluded that “the test generally applicable may be stated as follows: That a ‘miscarriage of justice’ should be declared only when the court, ‘after an examination of the entire cause, including the evidence,’ is of the ‘opinion’ that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.” (Id. at p. 836, italics added.) In sum, while stating the prejudice standard that applies to errors subject to harmless error analysis, Watson recognized that not all errors are subject to the harmless error test it articulated and that some errors may automatically constitute miscarriages of justice “regardless of the state of the evidence.” (Id. at p. 835.)
In People v. Cahill (1993) 5 Cal.4th 478 [20 Cal.Rptr.2d 582, 853 P.2d 1037], we reiterated O’Bryan’s, construction of the miscarriage of justice standard: “[Although, as a general rule, the determination whether an error has resulted in a ‘miscarriage of justice’ within the meaning of the constitutional provision will depend upon an appellate court’s evaluation of the effect of the error in light of the evidence at trial, in some contexts — for example, the erroneous denial of a defendant’s right to jury trial — an error may result in a miscarriage of justice, and require reversal, regardless of the strength of the evidence properly received at trial.” (Id. at p. 491.) We made similar statements in People v. Ernst (1994) 8 Cal.4th 441, 448 [34 Cal.Rptr.2d 238, 881 P.2d 298], and People v. Breverman (1998) 19 Cal.4th 142, 174 [77 Cal.Rptr.2d 870, 960 P.2d 1094], (See maj. opn., ante, at pp. 1133-1134.)
In People v. Collins (2001) 26 Cal.4th 297 [109 Cal.Rptr.2d 836, 27 P.3d 726], the trial court “found defendant guilty of three counts of forcible and five counts of nonforcible lewd or lascivious acts upon a child under the age of 14 years. [Citation.] The trial court found true the allegations that defendant committed three of the acts by force or fear and that two of the acts involved substantial sexual conduct [citations], and that defendant had served a prior prison term [citation].” (Id. at p. 303.) We held that the defendant’s jury trial waiver was invalid because the trial court had obtained the waiver by assuring the defendant of an unspecified benefit. (Id. at p. 312.) The Attorney General argued that we should review the case for harmless error (id. at p. 311), but we unanimously rejected that argument. As the court explained, “a harmless error standard does not, and cannot, apply in the present *1142 case. Under the federal Constitution, the right to trial by jury is recognized as fundamental, and its denial is ‘structural error,’ compelling reversal of a judgment of conviction without the necessity of a determination of prejudice. [Citations.] Similarly, under the California Constitution, the right to jury trial is fundamental, and its denial is considered a ‘structural defect in the proceedings,’ resulting in a ‘miscarriage of justice’ within the meaning of California Constitution, article VI, section 13, and requiring that the judgment of conviction be set aside.” (Ibid.; see id. at p. 314 (cone. opn. of Brown, J.).)
Finally, and most recently, our unanimous opinion in People v. Lightsey (2012) 54 Cal.4th 668 [143 Cal.Rptr.3d 589, 279 P.3d 1072] observed: “Typically, a defendant who has established error under state law must demonstrate there is a reasonable probability that in the absence of the error he or she would have obtained a more favorable result. [Citations.] As we have explained, however, ‘under the California constitutional harmless-error provision some errors ... are not susceptible to the “ordinary” or “generally applicable” harmless-error analysis — i.e., the Watson “reasonably probable” standard — and may require reversal of the judgment notwithstanding the strength of the evidence contained in the record in a particular case.’ ” (Id. at p. 699.) In Lightsey, we held that the trial court violated Penal Code section 1368 by allowing the defendant to represent himself in a competency proceeding, and we went on to conclude that the error automatically constituted a miscarriage of justice. (Lightsey, at p. 702.)
As this discussion makes clear, our statement in Watson of the harmless error standard routinely applied by California appellate courts does not articulate the full meaning of section 13, nor did it purport to do so. As Watson itself and our cases before and after Watson have recognized, section 13 has always meant that certain errors automatically constitute miscarriages of justice and require reversal. The reason was best stated in O’Bryan, which I quote again: “When we speak of administering ‘justice’ in criminal cases, under the English or American system of procedure, we mean something more than merely ascertaining whether an accused is or is not guilty. It is an essential part of justice that the question of guilt or innocence shall be determined by an orderly legal procedure, in which the substantial rights belonging to defendants shall be respected.” (O’Bryan, supra, 165 Cal. at p. 65.)
Our Legislature has determined that before the state may confine a defendant involuntarily, it must give him or her an adequate measure of procedural justice. “The right to trial by jury reflects ... ‘a profound judgment about the way in which law should be enforced and justice administered’ ” (Sullivan v. Louisiana (1993) 508 U.S. 275, 281 [124 L.Ed.2d 182, 113 S.Ct. 2078]), and that right must be observed “even though there *1143 had been the clearest proof’ (O’Bryan, supra, 165 Cal. at p. 66) that the defendant requires continued treatment. Today’s holdings requiring reversal when a trial court errs in completely denying an MDO or NGI defendant the right to a jury trial follow from the text, history, and purpose of section 13 as well as this court’s consistent and longstanding interpretation of that provision.
Werdegar, J., Cuéllar, J., and Kruger, J., concurred.