Filed 8/17/15 (this opn. follows companion case, S211078, also filed 8/17/15)

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
      Plaintiff and Respondent, )       S211329
)
      v. )
)       Ct.App. 6 H036977
DAWN QUANG TRAN, )
)       Santa Clara County
      Defendant and Appellant. )       Super. Ct. No. 205026
_____)

      In the companion case of *People v. Blackburn* (Aug. 17, 2015, S211078) ___ Cal.4th ___ (*Blackburn*), we addressed the meaning of provisions in the statutory scheme for extending the commitment of a mentally disordered offender (MDO) that require the trial court to "advise the person of his or her right to be represented by an attorney and of the right to a jury trial" and to hold a jury trial "unless waived by both the person and the district attorney." (Pen. Code, § 2972, subd. (a).) We held that the trial court must personally advise the MDO defendant of his or her right to a jury trial. In addition, before conducting a bench trial, the court must obtain the defendant's personal waiver of his or her right to a jury trial unless the court finds substantial evidence — that is, evidence sufficient to raise a reasonable doubt — that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision.

      In this case, we address the meaning of nearly identical language in the statutory scheme for extending the involuntary commitment of a person originally

1

committed after pleading not guilty by reason of insanity (NGI) to a criminal offense. The NGI statute provides that in a commitment extension proceeding, "the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial" (Pen. Code, § 1026.5, subd. (b)(3)), and "[t]he trial shall be by jury unless waived by both the person and the prosecuting attorney" (*id.*, § 1026.5, subd. (b)(4)). We hold that this language has the same meaning as the parallel language in the MDO statute: The trial court must advise the NGI defendant personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the defendant unless the court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision.

In this case, a bench trial resulted in an order extending the commitment of NGI defendant Dawn Quang Tran. The trial court did not advise Tran of his right to a jury trial, nor did it obtain a personal waiver from Tran or find substantial evidence that Tran lacked the capacity to make a knowing and voluntary waiver. In these respects, the trial court erred. When a trial court errs in completely denying an NGI defendant his or her statutory right to a jury trial, the error constitutes a miscarriage of justice and automatically requires reversal. In Tran's case, however, because the trial court and the parties, in reliance on prior law, likely did not contemplate the need to make a record in conformity with our holding, we reverse the Court of Appeal's judgment upholding the extension order and remand to that court with directions to remand the case to the trial court for a proper determination of whether Tran personally made a knowing and voluntary waiver of his right to a jury trial or whether, at the time of counsel's waiver, there was substantial evidence that Tran lacked the capacity to make a knowing and voluntary waiver.

2

**I.**

In 1998, Tran pleaded not guilty by reason of insanity to one count of lewd and lascivious conduct with a child under age 14. (Pen. Code, § 288, subd. (b)(1); all subsequent statutory references are to this code unless otherwise indicated.) Tran was committed to Napa State Hospital for treatment, and his commitment was extended by written waiver in 2005, by bench trial in 2007, and by jury trial in 2009.

In April 2011, the Santa Clara County District Attorney filed a petition to extend Tran's commitment a fourth time. No record was kept of the relevant pretrial proceedings. According to a settled statement requested by the Court of Appeal, defense counsel notified the court that Tran opposed an extension of his commitment and wanted a trial. Defense counsel requested a bench trial, and the prosecutor agreed.

At trial, Tran's treating psychiatrist at Napa State Hospital, Dr. Eric Khoury, testified that Tran suffered from bipolar disorder, which at times had been severe and had caused psychotic episodes. Dr. Khoury explained that the disorder was a chronic condition requiring regular medication. Although Tran generally took his medication, he occasionally claimed he was cured. Dr. Khoury expressed concern that without close supervision, Tran would stop taking his medication and, as a result, would pose a danger to himself and others due to his mental disorder. In response, Tran testified on his own behalf. He acknowledged that he was mentally ill at the time of commitment but believed he was ready for release. Although he admitted he had previously stopped taking his medication, he said he would take his medication for the rest of his life. The court sustained the petition and extended Tran's commitment.

Tran appealed, arguing that the trial court prejudicially erred by failing to advise him of his right to a jury trial and by failing to obtain his personal waiver of

3

that right before conducting a bench trial.  The Court of Appeal held that the language of section 1026.5, subdivision (b)(3) (hereafter section 1026.5(b)(3)) "imposes a mandatory duty" of advisement on the trial court and "reflects a legislative intent to judicially ensure that 'the person' knows that he or she has the right to a jury trial."  The Court of Appeal found that the trial court had failed to advise Tran of his right to a jury trial, but that this error was harmless because "the record does not show that defendant was unaware of his right."  The Court of Appeal reasoned that because Tran's third petition was tried before a jury, he was likely aware of his right to a jury trial.

The Court of Appeal further held that section 1026.5, subdivision (b)(4) (hereafter section 1026.5(b)(4)) does not require personal waiver.  However, the court said, because the purpose of the jury trial advisement is "to inform the NGI of the right to a jury trial so that he or she can decide whether to waive it," the waiver provision cannot reasonably be read to give counsel "exclusive control" over the decision to waive the right.  Instead, the court explained, counsel may waive a jury trial only "at the NGI's direction or with his or her knowledge and consent" or "over an NGI's objection when the circumstances give counsel reason to doubt the NGI's competence to determine what is in his or her best interests."  The court found that because Tran was likely aware of his right to a jury trial and there was no indication that Tran disagreed with counsel's decision to waive a jury trial, Tran could not meet his burden to show error.  Further, even if Tran could establish error, he could not establish prejudice in light of Dr. Khoury's adverse testimony.

We granted review in this case and in a companion case, *Blackburn*, which presents similar issues in the context of commitment extension proceedings for mentally disordered offenders.  (§ 2972, subd. (a).)

4

## II.

The Legislature enacted the statutory scheme that governs NGI commitment proceedings in 1979 in the wake of decisions of this court finding due process guarantees applicable to certain commitment proceedings. (See *In re Moye* (1978) 22 Cal.3d 457, 467; *People v. Feagley* (1975) 14 Cal.3d 338, 350; *People v. Burnick* (1975) 14 Cal.3d 306, 324–325; *In re Gary W.* (1971) 5 Cal.3d 296.) The statute, as enacted, set forth several procedural protections generally available only in the criminal context (Stats. 1979, ch. 1114, § 3, pp. 4051–4053), and those protections remain in the law today (§ 1026.5, subd. (b)(3), (4), & (7)). (See *Hudec v. Superior Court* (2015) 60 Cal.4th 815, 820–822 [reviewing legislative history of section 1026.5].)

A criminal defendant who pleads not guilty by reason of insanity and who is found legally insane at the time of the offense may be committed to a state medical facility for a period as long as the maximum sentence that could have been imposed for the underlying offense. (§ 1026.5, subd. (a)(1).) At least 180 days before the commitment term expires, the facility's medical director must submit an opinion to the prosecuting attorney advising whether the defendant represents a "substantial danger of physical harm to others" due to "mental disease, defect, or disorder." (§ 1026.5, subd. (b)(1), (2).) In turn, the prosecutor may request "supporting evaluations and relevant hospital records." (§ 1026.5, subd. (b)(2).)

The prosecuting attorney may then file a petition with the superior court seeking to extend the defendant's commitment by two years. Subdivision (b)(3) through (7) of section 1026.5 set forth the procedures applicable to a hearing on such a petition. As relevant here, when a petition is filed, "the court shall advise the person named in the petition of the right to be represented by an attorney and

5

of the right to a jury trial" (§ 1026.5(b)(3)), and "[t]he trial shall be by jury unless waived by both the person and the prosecuting attorney" (§ 1026.5(b)(4)).

We review de novo questions of statutory construction. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387.) In doing so, " 'our fundamental task is "to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." ' " (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321.) The advisement and waiver provisions at issue here are nearly identical to the provisions we construed in *Blackburn*. (See § 2972, subd. (a).) For reasons similar to those set forth in *Blackburn*, we construe the advisement and waiver provisions in the NGI statute to have the same meaning as the parallel provisions in the MDO statute.

To begin, the text of the advisement provision is unambiguous: "the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial." (§ 1026.5(b)(3).) The phrase "the person *named in the petition*" (*ibid.*, italics added) makes clear to whom the trial court must direct the advisement. And the coupling of "the right to be represented by an attorney" with "the right to a jury trial" in section 1026.5(b)(3) indicates that the trial court must advise the NGI defendant personally even if he or she is represented by counsel. Like section 2972, subdivision (a), section 1026.5(b)(3)'s advisement provision requires the trial court to advise the defendant on the record in a court proceeding. (See *Blackburn*, *supra*, __ Cal.4th at pp. __–__ [pp. 11–12].)

The waiver provision — "The trial shall be by jury unless waived by both the person and the prosecuting attorney" (§ 1026.5(b)(4)) — immediately follows the advisement provision. When these provisions are read together, it is clear that "the person" in section 1026.5(b)(4) means "the person named in the petition" in section 1026.5(b)(3). Moreover, because the purpose of advising a defendant of a

6

particular right is to enable the defendant to make an informed choice about whether to waive that right, the waiver provision is most naturally read to mean that the choice whether to waive a jury trial belongs to "the person" in the first instance. (See *Blackburn*, *supra*, __ Cal.4th at p. __ [p. 14] ["If the Legislature had intended to allow counsel to waive a jury trial notwithstanding the defendant's wishes, it would not have needed to require the trial court to expressly advise the defendant."].)

We are mindful that an NGI commitment extension proceeding necessarily involves a defendant alleged to represent "a substantial danger of physical harm to others" "by reason of a mental disease, defect, or disorder." (§ 1026.5, subd. (b)(1).) We presume the Legislature was aware that many NGI defendants lack the capacity to make a knowing and voluntary waiver of their right to a jury trial, and did not intend courts to obtain a jury trial waiver from such persons. But we disagree with the Attorney General that courts can infer that nearly every NGI defendant in a commitment extension proceeding lacks the capacity to make a knowing and voluntary waiver from the preliminary showing that must accompany an extension petition. (See § 1026.5, subd. (b)(2).)

As we explained in *Blackburn*, "many persons who suffer from mental illness or related disorders can understand the nature of legal proceedings and determine their own best interests." (*Blackburn*, *supra*, __ Cal.4th at p. __ [p. 18].) Indeed, any person found "insane at the time the offense was committed" is necessarily a person previously deemed competent to stand trial (§ 1026, subd. (a)), and the entire premise of the NGI commitment scheme is that the defendant's mental disease, defect, or disorder is treatable (§ 1026.5, subd. (b)(11)) and that the defendant's sanity may be "recovered fully" (§ 1026, subd. (a)) or "restored" (§ 1026.2, subd. (a)). In this case, Tran pleaded not guilty by reason of insanity to lewd and lascivious conduct after he was found "in his underwear with his penis

7

exposed standing over a four-year-old child whose pants and underwear had been pulled down." As Tran has admitted, he struggled with mental illness at the time of his commitment. But the record suggests that at his most recent commitment extension trial, Tran understood the nature of the proceeding and was able to rationally assist counsel in the conduct of his defense. Tran's treating psychiatrist, Dr. Khoury, opined that Tran was "doing very well" and had not recently exhibited any symptoms. On the basis of this testimony, the trial court said: "[I]t sounds to me like Mr. Tran is very close to [conditional release under supervision]."

In view of these considerations, we adopt the same approach here as in *Blackburn*: In a section 1026.5, subdivision (b) commitment extension hearing, the decision to waive a jury trial belongs to the NGI defendant in the first instance, and the trial court must elicit the waiver decision from the defendant on the record in a court proceeding. But if the trial court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, then control of the waiver decision belongs to counsel, and the defendant may not override counsel's decision. In this context, evidence is substantial when it raises a reasonable doubt about the defendant's capacity to make a knowing and voluntary waiver, and the trial court's finding of a reasonable doubt must appear on the record.

In light of our interpretation of the MDO advisement and waiver provisions in *Blackburn*, we could hardly reach a different interpretation of the NGI advisement and waiver provisions. " 'It is an established rule of statutory construction that similar statutes should be construed in light of one another [citations] and that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings.' " (*People v. Lamas* (2007) 42 Cal.4th 516, 525.) "Two ' "[s]tatutes are considered to be *in pari materia* when they relate to

8

the same person or thing, to the same class of person[s or] things, or have the same purpose or object." ' " (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1091.) The MDO and NGI commitment extension schemes both address persons afflicted by mental disorders. (§§ 1026.5, subd. (a), 2960.) Both have the dual purpose of "protecting the public while treating severely mentally ill offenders." (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061 [MDO statute]; see *People v. Lara* (2010) 48 Cal.4th 216, 228 [NGI statute].) Both statutory schemes provide procedural protections to defendants borrowed from the criminal context. (*Blackburn*, *supra*, __ Cal.4th at p. __ [pp. 6, 27]; § 1026.5, subd. (b)(7) ["The [NGI defendant] shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings."].) And the advisement and waiver provisions in the two schemes, enacted six years apart, use nearly identical language. (§§ 1026.5(b)(3), 1026.5(b)(4), 2972, subd. (a).) Because the advisement and waiver provisions in the two schemes are in pari materia, they " 'should be given like meanings.' " (*Lamas*, at p. 525.) Doing so also avoids equal protection concerns that may arise from treating NGI defendants differently from MDO defendants with respect to advisement and waiver. (See *People v. Barrett* (2012) 54 Cal.4th 1081, 1107.)

In this case, the record does not indicate that the trial court advised Tran of his right to a jury trial. Nor did the trial court obtain Tran's personal waiver of his right to a jury trial or find substantial evidence that he lacked the capacity to make a knowing and voluntary waiver. In these respects, we conclude the trial court erred under sections 1026.5(b)(3) and 1026.5(b)(4).

The Court of Appeal held that waiver by counsel must be "at the NGI's direction or with his or her knowledge and consent" unless "the circumstances give counsel reason to doubt the NGI's competence to determine what is in his or her best interests." But the Court of Appeal declined to find error in this case,

9

explaining that because counsel waived Tran's presence at every pretrial hearing, the trial court could "reasonably expect counsel to discuss all pertinent matters that will arise or that have arisen in pretrial hearings, including the right to a jury trial and whether to have one." The Court of Appeal added that "the record does not show that defendant was unaware of his right [to a jury trial]. On the contrary, it suggests otherwise. This was defendant's fourth extension trial. In the appeal from his second extension order, defendant claimed that he was denied his right to a jury trial because he did not personally waive it. [Citation.] Moreover, he had a jury trial on his third extension. [Citation.] [¶] The record also does not show that defendant wanted a jury trial on the instant petition or that he did not authorize or agree to counsel's waiver or that he opposed or would have opposed counsel's waiver."

Unlike the Court of Appeal and our concurring and dissenting colleague (conc. & dis. opn., *post*, at pp. 3–5), we decline to infer from these circumstances that Tran knowingly and voluntarily waived his right to a jury trial. To presume Tran's knowing and voluntary waiver, as the Court of Appeal did, would defeat the point of the advisement and waiver provisions of sections 1026.5(b)(3) and 1026.5(b)(4). By providing a right to counsel for NGI defendants facing extended commitment (§ 1026.5(b)(7)), the Legislature enacted section 1026.5(b)(3) and (4) on the understanding that most defendants would be represented by counsel. If counsel could waive a jury trial based on the defendant's presumed consent when the record does not expressly indicate the defendant's wishes, and even when the defendant is not present when the waiver occurs, then the Legislature would have had no need to require the trial court to advise "the person named in the petition" of his or her right to a jury trial or to obtain a waiver from "the person." (§ 1026.5(b)(3), (4).) Instead, counsel would be authorized to make the waiver decision, and the onus would be on the defendant to prove lack of consent. But

10

that is not the scheme the Legislature enacted. Section 1026.5(b)(4) makes clear that "[t]he trial *shall* be by jury *unless* waived by both the person and the prosecuting attorney." (Italics added.) The statute does not require the defendant to affirmatively show he or she wanted a jury trial; a jury trial is the default procedure absent a personal waiver. In sum, the trial court must elicit the waiver decision from the defendant in a court proceeding unless it finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case counsel controls the waiver decision.

We disapprove *People v. Powell* (2004) 114 Cal.App.4th 1153, 1158 (*Powell*), and *People v. Givan* (2007) 156 Cal.App.4th 405, 410–411 (*Givan*), to the extent they are inconsistent with this rule.

### III.

As to whether a trial court's acceptance of an invalid jury trial waiver under section 1026.5(b)(4) may be deemed harmless, we hold for the reasons set forth in *Blackburn*, *supra*, __ Cal.4th at p. __ [pp. 23–29] that such error — resulting in a complete denial of the defendant's right to a jury trial on the entire cause in a commitment proceeding — is not susceptible to ordinary harmless error analysis and automatically requires reversal. Here, as in *Blackburn*, we consider it significant that the statute confers procedural protections that are borrowed directly from the criminal context. However, as in *Blackburn*, we note that not all errors under section 1026.5(b)(4)'s advisement and waiver provisions require automatic reversal. A trial court's acceptance of counsel's waiver without an explicit finding of substantial evidence that the NGI defendant lacked the capacity to make a knowing and voluntary waiver may be deemed harmless if the record affirmatively shows that there was substantial evidence that the defendant lacked that capacity at the time of defense counsel's waiver. Similarly, a trial court's acceptance of a defendant's personal waiver without an express advisement of the

11

statutory right to a jury trial may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary. In both scenarios, the requirement of an *affirmative* showing means that no valid waiver may be presumed from a silent record. (*Ante*, at p. 10.) Ultimately, we emphasize that the most certain means of ensuring a valid waiver is careful compliance with the express advisement and waiver process explained in this opinion and in *Blackburn*.

Here, as in *Blackburn*, we acknowledge that our decision rejects the rule previously set forth in *Powell*, *supra*, 114 Cal.App.4th 1153 and *Givan*, *supra*, 156 Cal.App.4th 405, that counsel invariably controls the decision to waive a jury trial in an NGI commitment proceeding. In Tran's case, the trial court and the parties may have reasonably relied on that prior law in proceeding with a bench trial without making a record of Tran's personal waiver or his inability to make a knowing and voluntary waiver at the time of counsel's waiver. Accordingly, we remand this case to the Court of Appeal with directions to remand to the trial court so that the district attorney may submit evidence, if any, that Tran personally made a knowing and voluntary waiver or that he lacked the capacity to make a knowing and voluntary waiver at the time of counsel's waiver. If the trial court finds by a preponderance of the evidence that Tran made a knowing and voluntary waiver, or if it finds substantial evidence that Tran lacked the capacity to make a knowing and voluntary at the time of counsel's waiver, then the court shall reinstate the extension order. This approach applies to all cases presently on direct appeal where the record does not reveal whether an NGI defendant personally waived his or her right to a jury trial or whether there was substantial evidence that the defendant lacked the capacity to make a knowing and voluntary waiver at the time of counsel's waiver.

## CONCLUSION

For the reasons above, we reverse the judgment of the Court of Appeal upholding the commitment extension order and remand for proceedings not inconsistent with this opinion.

**LIU, J.**

**WE CONCUR:**

**WERDEGAR, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

13

## CONCURRING AND DISSENTING OPINION
## BY CANTIL-SAKAUYE, C. J.

I concur in parts I and II of today's opinion, but I respectfully dissent from the remainder of the opinion concerning the applicability of harmless error review for the same reasons explained in my opinion in the companion case of *People v. Blackburn* (August 17, 2015, S211078) ___ Cal.4th ___ (*Blackburn*). We are bound by, and must follow, the harmless error approach set forth in article VI, section 13 of the California Constitution. Tran's right to a jury trial concerning the extension of his involuntary commitment after pleading not guilty by reason of insanity (NGI) is based on a state statute, not on any independent state or federal constitutional ground, and the errors at issue here — the trial court's failure to advise him of his statutory right to a jury trial and obtain a personal waiver of that right — are not the type of fundamental structural defects that invariably constitute a "miscarriage of justice" under article VI, section 13, and are capable of being reviewed to determine whether the errors actually affected the outcome of the proceeding. Accordingly, as in *Blackburn*, I conclude that application of an automatic reversal rule is unwarranted.

Moreover, under the governing harmless error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836, it is not reasonably probable that if the trial court had personally advised Tran of the right to a jury trial and asked if he wanted a jury trial, Tran would have requested one over his counsel's advice. First, as in

1

*Blackburn*, Tran was represented by counsel who concluded that it was in Tran's best interest to be tried by the court, not a jury. Second, the record here demonstrates that, in light of his past experience, Tran was well aware of his right to a jury trial and consequently that his failure to object to his counsel's request for a court trial realistically reflected a knowing waiver of the right to have the proceeding decided by a jury. There is simply no reasonable basis for finding the court's failure to personally advise Tran of his right to a jury trial and to elicit an on-the-record waiver of that right affected the outcome in this case. The circumstances of this matter only further emphasize how the statutory advisement and waiver errors at issue here are fully amenable to harmless error review on a case-by-case basis. Therefore, in my view, the majority's remand of this matter to the lower courts is both unnecessary and unwarranted.

## I. BACKGROUND

Defendant Dawn Quang Tran pleaded NGI to a charge of committing a lewd and lascivious act on a child under the age of 14 by means of force, violence, duress, or fear after he sexually assaulted a four-year-old girl, whom he delusionally believed was an angel. He was committed to Napa State Hospital. As the Court of Appeal noted below, his commitment was extended three times — by written waiver in 2005, a bench trial in 2007, and after a jury trial in 2009. The Santa Clara County District Attorney filed a fourth petition for recommitment, which Tran again opposed and which is at issue here. At Tran's counsel's request, the proceeding was tried by the court. The court did not personally advise Tran of his right to a jury trial or elicit a waiver of that right from Tran personally.

At this most recent trial, Tran's treating psychiatrist, Dr. Eric Khoury, M.D., of Napa State Hospital, testified that Tran suffered from chronic bipolar disorder with severe psychotic episodes. According to Dr. Khoury, Tran experienced paranoia, delusions, and hallucinations. Dr. Khoury stated that Tran's

2

mental disorder had contributed to his underlying crime, but that Tran has only a vague understanding of how his illness contributed to that crime. The psychiatrist explained that Tran was being successfully treated with antipsychotic medication, but that Tran believes he has been cured of his mental illness. Because he believes he is cured, Tran has sometimes refused to take his medication. For example, two years previously, Tran refused to take his medication, became psychotic, and was placed in lockdown. According to Dr. Khoury, Tran does not recognize that his symptoms are a result of his mental illness; he expressed concern that, if released, Tran would not continue his medication or participate in outpatient therapy, which would make him a danger to others. Dr. Khoury did believe, however, that Tran might qualify for the conditional release program, but he emphasized that Tran would need to be under supervision. If Tran were released unconditionally, Dr. Khoury believed Tran would not take his medication.

Unlike the defendant in *Blackburn*, Tran presented defense evidence in the form of Tran's own testimony. Tran testified that he acknowledged he had a mental illness and that he would continue his medication and psychiatric treatment. He claimed that if he was released unsupervised, he would continue to take his medication for the rest of his life, and stated he understood that, if he did not, he might act badly. When asked about the prior occasion in which he refused to take his medication, became psychotic, and was placed in lockdown, Tran insisted he had had no symptoms of mental illness in that instance and that he had stopped his medication because of high blood pressure.

The trial court sustained the petition and granted a two-year extension of Tran's commitment pursuant to Penal Code section 1026.5.

## II. DISCUSSION

Based on the record in this case, I believe it is clear that the judgment should be affirmed. As in *Blackburn*, the errors at issue here involving Tran's

3

statutory right to a jury trial are state law error as to which, under the dictates of article VI, section 13 of the California Constitution, we must conduct "an examination of the entire cause, including the evidence," in order to determine whether "the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) As I explained in my separate opinion in *Blackburn*, the advisement and waiver errors that occurred in this case are by no means the equivalent of a total denial of the right to jury trial, so the errors do not constitute a per se "miscarriage of justice." Instead, as explained in *Watson*, *supra*, 46 Cal.2d 818, 836, "a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." Here, it is clear for two separate reasons that it is not reasonably probable that a result more favorable to Tran would have been reached in the absence of the trial court errors in failing to advise Tran personally of his right to a jury trial and to elicit a personal waiver of that right from Tran.

First, Tran was represented by counsel who was undoubtedly aware of his client's right to a jury trial, and determined that it was in his client's interest to be tried by the court, rather than a jury. As in *Blackburn*, it is not reasonably probable that, in the absence of the trial court errors, Tran would have requested a jury trial over his counsel's contrary advice.

Second, as the Court of Appeal below noted,[1] in light of Tran's prior experience with commitment extension proceedings, he was unquestionably aware

---

[1] The Court of Appeal took judicial notice of its appellate decisions in Tran's prior appeals of his commitment extension proceedings — *People v. Tran* (Jan. 28, 2009, H031976) and *People v. Tran* (July 26, 2010, H034743).

4

of his right to a jury trial at the time of the present proceeding. After the district attorney filed the first commitment extension, Tran filed a written waiver of his rights, including a written waiver of his right to a jury trial, and submitted the matter to the trial court. At his second commitment extension, Tran had a bench trial, then appealed the commitment extension, complaining about the denial of a jury trial. In that case, the Court of Appeal rejected the claim in an unpublished decision, holding that Tran's counsel properly waived the statutory right to a jury and that Tran's personal waiver was not required; at the same time, however, the opinion recognized that the governing statute affords a defendant a right to a jury trial in such an extension proceeding. Thereafter, at his third commitment extension proceeding, Tran declined to waive a jury trial under Penal Code section 1026.5, subdivision (b)(4), and, in fact, was tried by a jury.

In this fourth extension proceeding, defendant appeared in court with counsel and participated in the bench trial without objection or complaint. There is no reason to conclude that if personally advised by the court of the statutory right to a jury trial and asked if he wished to invoke or waive that right, Tran would have requested to be tried by a jury, rather than by the court as his counsel requested. If Tran had wanted a jury trial for the current commitment proceeding, he certainly knew that he was entitled to one and how to request one given his prior commitment proceedings. Under these circumstances, there is no basis to infer that defendant was ignorant of his right to a jury trial, wanted a jury trial, or that his counsel vetoed defendant's wish for a jury trial.

Accordingly, it appears clear that the trial court's error in failing to personally advise Tran of his right to a jury trial and to obtain a personal waiver of that right did not affect the outcome. With respect, today's decision to remand this matter to the lower courts to determine "by a preponderance of the evidence

5

[whether] Tran made a knowing and voluntary waiver" (maj. opn., *ante*, at p. 12), is unnecessary and unwarranted.

For the foregoing reasons, I would simply affirm the judgment.

**CANTIL-SAKAUYE, C. J.**

**I CONCUR:**

**CHIN, J.**

6

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Tran

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 216 Cal.App.4th 102
**Rehearing Granted**

_____

**Opinion No.** S211329
**Date Filed:** August 17, 2015

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Gilbert T. Brown

_____

**Counsel:**

Carl A. Gonser, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Jeffrey M. Laurence, Acting Assistant Attorney General, Laurence K. Sullivan, Catherine A. Rivlin and Karen Z. Bovarnick, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Carl A. Gonser
P.O. Box 151317
San Rafael, CA  94915-1317
(415) 459-3559

Karen Z. Bovarnick
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5550