Filed 4/12/16  P. v. Fekadu CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067686 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD109580) |
| BERIHU FEKADU, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Conditionally reversed and remanded with directions.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

Berihu[1] Fekadu appeals from a decision granting a petition to extend his commitment as a person found not guilty by reason of insanity (NGI) for an additional two-year period. (Pen. Code,[2] § 1026.5.) Fekadu contends: (1) the minute order from his trial erroneously references a one-year commitment and mentally disordered offender (MDO) status and should be corrected to reflect his two-year commitment extension and clarify his status as an NGI defendant; and (2) the trial court erred when it allowed Fekadu's trial counsel to waive his right to a jury trial without sufficient findings to establish Fekadu's personal voluntary waiver or his lack of capacity to do so. The People correctly concede that the minute order must be amended and that the matter must be remanded to permit the trial court to make the required findings, or to grant a new trial.

We agree that the minutes contain errors that must be corrected. We also agree that the trial court erred in allowing Fekadu's right to a jury trial to be waived without the required affirmative showing. We therefore reverse the commitment order and remand to the trial court to make the necessary findings.

FACTUAL AND PROCEDURAL BACKGROUND

In 1995, a jury found Fekadu NGI as to two counts of a forcible lewd act with a child (§ 288, subd. (b)) and three counts of felony assault (§ 245, subd. (a)(1)). The court found Fekadu had not recovered his sanity at that time and he was committed for treatment with a maximum term of confinement (including only periods of actual

---

[1]    Mr. Fekadu's first name is predominately spelled "Berhu" in the trial court record and case caption, but is spelled "Berihu" on the notice of appeal.

[2]    All further statutory references are to the Penal Code unless otherwise specified.

2

confinement) of six years and 10 months.  In 1998 and 1999, Fekadu was on outpatient status for a short period of time, but otherwise has remained confined since the original trial.  Fekadu's commitment had been extended five times prior to the present case.

On May 6, 2014, the San Diego County District Attorney petitioned for a sixth time to extend Fekadu's commitment.  Before the petition was heard, the parties were before the court on several occasions.[3]  On September 5, 2014, Fekadu's attorney stated that he "discussed Mr. Fekadu's trial rights with him" and "he's asking to set a jury trial date."  On January 8, 2015, the court documented Fekadu's behavior for the record as follows:

> "[T]he last three days, Mr. Fekadu was refusing to come out of his cell and so he could not be sent out, and then today he did agree to come out of his cell, he was brought into the courtroom, made a scene in the courtroom, kept speaking very loudly and was very disruptive in the courtroom, so he is not currently present."

On March 3, 2015, counsel for both parties informed the court that there would be a jury waiver.  Fekadu was present at the hearing.  Later that day, the court held a bench trial on the commitment petition.  During the trial, Fekadu interrupted on two separate occasions with "emergency question[s]."  First, Fekadu complained that he had a "very, very, very prejudice attorney" and that he didn't think he could "have a fair trial with him," as he "had a little fight, and he brings three interpreters and under one name."  Fekadu rejected the interpreter because he believed she and the attorneys were "very, very, very corrupt," "[t]oo danger to me and to others," "unfair," "HIV positive," "fraud"

---

3    Although Judge Melinda J. Lasater presided over the bench trial, pretrial hearings were heard by several different judges.

and "fraudest" and he did not want them.  Second, Fekadu interrupted to ask that one of the witnesses repeat her statements "under oath," and when instructed by the court to be quiet, stated:  "[d]angerous, corruptive, unbelievable, unbelievable, unbelievable."  In addition, when the court allowed Fekadu to speak at the end of the hearing, he said he had been a victim of abuse in Ethiopia since he was 10 and had then become blind, athletic, a "doctor that can heal," "a savior," "[a] prayer warrior and defensive warrior" and "a preacher."  Fekadu further stated that he is an immigrant and did not come to commit crime, but "for peaceful better life."  Fedaku closed by accusing the doctor of lying, saying:  "it's all lies" and "unbelievable."

Upon conclusion of the bench trial, the court granted the petition and extended Fekadu's period of commitment.  The court considered the elements of CALCRIM No. 3453 (Extension of Commitment), which encompasses the standard of section 1026.5, subdivision (b)(1).  The court made findings beyond a reasonable doubt that "Mr. Fekadu does suffer from a mental disease and disorder and specifically as the doctor indicated schizophrenia paranoid type and that as a result of the mental disease defective disorder, that he poses a substantial danger of physical harm to others and has a difficulty controlling his danger [*sic*] and behavior."  However, the court minutes dated March 3, 2015, incorrectly refers to the petition as "Petition re:  PC2970" (the section setting the standard for extending MDO involuntary commitment) and further states that the commitment is extended "for a period of one year" (corresponding to the MDO commitment extension period under § 2970).  The two-year time period and statutory

4

references to section 1026.5 are referenced in the order for extension of commitment filed on March 13, 2015.

DISCUSSION

I. *Court Trial Minutes*

Fekadu contends that the court minutes of March 3, 2015, incorrectly use the language of MDO commitments and erroneously purport to extend Fekadu's commitment for only one year. Fekadu is concerned about potential adverse consequences from these errors if they are not corrected.

The appellate court may correct clerical errors on its own motion or upon application of the parties. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187.) It appears clear from the record that there were clerical errors in the March 3, 2015 minutes that are inconsistent with the court's determination at trial and its final order. The minute order refers to a one-year extension of Fekadu's commitment and describes the proceeding as "COURT TRIAL ON PETITION RE: PC2970," reflecting the standard governing MDO extension proceedings. We find that the time period in the minutes should be modified to reflect the correct two-year term of a section 1026.5 commitment extension. We further find that the erroneous reference to section 2970, the standard for MDO extensions, should be corrected.

II. *Waiver of Jury Trial*

Fekadu further maintains the trial court erred by allowing Fekadu's trial counsel to waive his right to a jury trial. We agree.

A. *Background*

On March 3, 2015, Fekadu's trial counsel waived Fekadu's right to a jury trial. Although Fekadu was present at the hearing, the court did not inquire about Fekadu's position on the matter, and Fekadu's trial counsel made no representation that Fekadu had consented to the waiver. Fekadu's counsel had previously represented (on Sept. 5, 2014) that he "discussed Mr. Fekadu's trial rights with him" and "he's asking to set a jury trial date."

B. *Law and Analysis*

Section 1026.5, subdivision (b)(1)-(11) establishes the procedure for extending commitment time for NGI defendants. Subdivision (b)(3) requires the court to "advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial." Subdivision (b)(4) provides for the right to jury trial "unless waived by both the person and the prosecuting attorney." Subdivision (b)(7) establishes that the person "shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings."

In August 2015, the Supreme Court examined the standard for a jury waiver under section 1026.5 and held that pursuant to subdivisions (b)(3) and (b)(4): "The trial court must advise the NGI defendant personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the defendant unless the court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision." *People v. Tran* (2015) 61 Cal.4th 1160, 1163 (*Tran*).) In *Tran,* "[t]he trial

6

court did not advise Tran of his right to a jury trial, nor did it obtain a personal waiver from Tran or find substantial evidence that Tran lacked the capacity to make a knowing and voluntary waiver." (*Ibid.*) The Supreme Court found that the trial court erred in these respects. (*Ibid.*) *Tran* summarized that "the trial court must elicit the waiver decision from the defendant in a court proceeding unless it finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case counsel controls the waiver decision," and disapproved *People v. Powell* (2004) 114 Cal.App.4th 1153, 1158, and *People v. Givan* (2007) 156 Cal.App.4th 405, 410-411, "to the extent they are inconsistent with this rule." (*Tran*, at p. 1169.)

The Supreme Court further held that a trial court's acceptance of an invalid jury trial waiver requires an automatic reversal, except under the following circumstances:

> "A trial court's acceptance of counsel's waiver without an explicit finding of substantial evidence that the NGI defendant lacked the capacity to make a knowing and voluntary waiver may be deemed harmless if the record affirmatively shows that there was substantial evidence that the defendant lacked that capacity at the time of defense counsel's waiver. Similarly, a trial court's acceptance of a defendant's personal waiver without an express advisement of the statutory right to a jury trial may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*Tran*, *supra*, 61 Cal.4th at p. 1170.)

However, because the trial court and parties in *Tran* "may have reasonably relied on that prior law in proceeding with a bench trial without making a record of Tran's personal waiver or his inability to make a knowing and voluntary waiver at the time of counsel's waiver," the Supreme Court instructed the Court of Appeal "to remand to the trial court so that the district attorney may submit evidence, if any, that Tran personally

7

made a knowing and voluntary waiver or that he lacked the capacity to make a knowing and voluntary waiver at the time of counsel's waiver." (*Tran, supra,* 61 Cal.4th at p. 1170.) "If the trial court finds by a preponderance of the evidence that Tran made a knowing and voluntary waiver, or if it finds substantial evidence that Tran lacked the capacity to make a knowing and voluntary waiver at the time of counsel's waiver, then the court shall reinstate the extension order." (*Ibid.*) The Supreme Court clarified that:

> "This approach applies to all cases presently on direct appeal where the record does not reveal whether an NGI defendant personally waived his or her right to a jury trial or whether there was substantial evidence that the defendant lacked the capacity to make a knowing and voluntary waiver at the time of counsel's waiver." (*Ibid.*)

Here, as in *Tran, supra*, 61 Cal.4th 1160, there is insufficient evidence on the record to establish that Fekadu was instructed of his right to a jury trial and personally made a knowing and voluntary waiver. Nor did the trial court determine that Fekadu lacked the capacity to make such a waiver, although there is considerable evidence of his bizarre behavior on and around the waiver date. Under these circumstances, the matter must be remanded to the trial court to make the affirmative showing required by *Tran*.

## DISPOSITION

The order of the trial court extending Fekadu's commitment is conditionally reversed. The matter is remanded to the trial court to determine whether Fekadu made a knowing and voluntary waiver of his right to a jury trial or whether, at the time of the waiver, there was substantial evidence that Fekadu lacked the capacity to make a knowing and voluntary waiver. If the court determines that Fekadu made a knowing and voluntary waiver, or finds substantial evidence that he lacked the capacity to make such a

8

waiver, the order extending Fekadu's commitment shall be reinstated.  If such evidence cannot be established, the court is instructed to provide a new hearing and disposition that comply with *Tran, supra*, 61 Cal.4th 1160.

In addition, the March 3, 2015 long form minutes are hereby corrected (on p. 1 of 2) to read "COURT TRIAL ON PETITION RE:  PC1026.5" instead of "COURT TRIAL ON PETITION RE:  PC2970" and "for a period of two years" instead of "for a period of one year."


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

9