Filed 12/22/25  P. v. Sy CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085569 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN338589) |
| CHOJI SY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Rachel Cano, Judge.  Affirmed.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Donald W. Ostertag and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

Choji Sy appeals an order extending his commitment to the State Department of State Hospitals for two years under Penal Code section 1026.5,[1] a special civil recommitment procedure that applies to defendants

---

1      Undesignated statutory references are to the Penal Code.

who were originally hospitalized after being found not guilty by reason of insanity (NGI) in a criminal prosecution. On appeal, Sy contends the court failed to properly advise him of his right to a jury trial prior to obtaining a personal waiver and requests the order be reversed. Concluding that his waiver was knowing and voluntary, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2016, Sy pleaded NGI to one count of assault with a deadly weapon (§ 245, subd. (a)(1)) and was committed to Patton State Hospital for treatment.[2] His commitment was extended in 2018 and again in 2021. In 2021, he was discharged to a conditional release program (CONREP) where he remained until he was rehospitalized in 2024.

Following his rehospitalization, the district attorney filed a petition to extend Sy's commitment, alleging he remained a substantial danger to others. The court appointed two doctors to evaluate whether Sy's sanity had been recovered pursuant to section 1026.5, and scheduled a readiness hearing.

At the readiness hearing on January 3, 2025, defense counsel informed the court that Sy intended to waive his right to a jury trial. The court then explained to Sy that, for trial, he had the right "to have 12 people decide [his] verdict unanimously" and asked if he "g[a]ve up that right so that it could be in front of a judge to decide that?" Sy responded: "Yes, Your Honor." The court took note of his waiver and proceeded with a bench trial.

At trial, the People called three doctors familiar with the case to testify about Sy's schizophrenia diagnosis. The doctors also explained that, while he had not shown any overt symptoms since returning to the hospital, it was

---

[2] The parties stipulated that Sy was not sane when he committed the offense.

possible Sy would stop taking his medication if he were discharged and thus, it was recommended he remain in state care. For the defense, Sy appeared remotely and testified on his own behalf to request an unconditional discharge.

The court ultimately ordered that Sy be recommitted to Patton State Hospital.

## DISCUSSION

Sy contends the trial court failed to properly advise him of his right to a jury trial before accepting his personal waiver. The People disagree, contending his waiver was knowing and intelligent based on the totality of the circumstances.

Section 1026.5, subdivision (b), specifies the procedural requirements for a commitment extension hearing, providing that "the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial" and that such trial "shall be by jury unless waived by both the person and the prosecuting attorney." (§ 1026.5, subd. (b)(3) & (4).) Thus, "the decision to waive a jury trial belongs to the NGI defendant in the first instance, and the trial court must elicit the waiver decision from the defendant on the record in a court proceeding." (*People v. Tran* (2015) 61 Cal.4th 1160, 1167.) Acceptance of an invalid jury trial waiver generally requires automatic reversal. (*Id*. at p. 1169.) However, where a trial court accepts the "defendant's personal waiver without an express advisement of the statutory right to a jury trial," the error "may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*Id*. at p. 1170.)

3

Here, we conclude the court's advisement was sufficient so as to allow Sy to knowingly and voluntary waive his right to a jury trial. At the readiness hearing, defense counsel informed the court that he and Sy had spoken the day before and that Sy wished to waive his right to a jury trial. (Compare *People v. Daniels* (2017) 3 Cal.5th 961, 993 (*Daniels*) [defendant was self-represented and trial judge initiated request for waiver] (lead opn. of Cuéllar, J.).) The trial court then informed Sy of his right to a jury trial, which would include 12 people deciding his verdict unanimously, and that if he waived that right, the matter would be decided by the judge. The court's advisement satisfied its purpose by sufficiently informing Sy of what his right entailed so that he could confirm he had made an informed decision to waive it. (See *People v. Blackburn* (2015) 61 Cal.4th 1113, 1125 [purpose of an advisement is to inform the defendant of a particular right so they can make an informed choice about whether to waive that right].)

While Sy acknowledges the record contains both a statement from the court and his express personal waiver, he points to *People v. Sivongxxay* (2017) 3 Cal.5th 151 (*Sivongxxay*) to allege his waiver was not knowing and intelligent. (See also *People v. Collins* (2001) 26 Cal.4th 297, 305 [waiver may be accepted as knowing and intelligent where the defendant is fully aware of the nature of the right being abandoned and the consequences of abandoning it].) Specifically, he asserts the advisement was deficient because the court did not explain that he could participate in jury selection, nor did it ask if he had consulted with his attorney, if his attorney had explained the differences between a jury and bench trial, or whether he understood the right being waived.

In *Sivongxxay, supra,* 3 Cal.5th 151, our Supreme Court examined whether a criminal defendant's waiver of the right to a jury trial was

4

knowing and intelligent in the context of a death penalty prosecution. The court emphasized "the value of a robust oral colloquy in evincing a knowing, intelligent, and voluntary waiver of a jury trial" and offered general guidance as to the sort of information trial courts should include when advising defendants of their right. (*Id*. at p. 169.) Specifically, the court recommended trial courts advise defendants of the basic mechanics of a jury trial, including "that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Ibid*.)

At the same time, however, the Supreme Court indicated it did not intend for its suggestions to limit trial courts to any narrow or rigid script. (*Sivongxxay, supra*, 3 Cal.5th at p. 170.) Instead, it noted that "a trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid." (*Ibid*.) In fact, the court has consistently eschewed rigid guidelines for deciding whether to accept a defendant's waiver of the right to jury trial. (*Daniels, supra*, 3 Cal.5th at pp. 992–993 (lead opn. of Cuéllar, J.).) Rather, trial judges are asked to consider a defendant's individual circumstances and exercise judgment to determine how to ensure a waiver is knowing and intelligent. (*Sivongxxay,* at p. 170.)

In this case, free to consider Sy's individual circumstances and exercise judgment, the trial court may have reasonably inferred Sy understood the right he was waiving and the consequences of that decision, therefore concluding no additional inquiry was required. For instance, the court knew Sy and his attorney had spoken the day prior to prepare for the readiness

hearing.  (Compare *People v. Blancett* (2017) 15 Cal.App.5th 1200, 1206 [court appointed counsel moments before defendant entered his waiver and nothing in the record suggested defendant spoke with his attorney prior to the waiver].)  This was his third commitment extension hearing.  (See *Sivongxxay, supra*, 3 Cal.5th at pp. 167–168 [defendant's previous experience with the criminal justice system is relevant as to whether defendant's waiver was knowing and intelligent].)  At the very least, he would have been informed of his right to a jury trial when his commitment was extended in 2018 and 2021.

Additionally, when he pleaded guilty in 2016, his plea form included a jury trial waiver that the criminal court accepted at the change of plea hearing as knowing, intelligent, and voluntary.  Moreover, in January 2024 Sy waived his right to a court hearing or jury trial regarding the renewal of his outpatient status for one year.  During his waiver colloquy, the court explained to Sy he had the right to his "own attorney, the right to remain silent, the right to present evidence on [his] own behalf, and the right to cross-examine witnesses," and Sy confirmed he understood those rights and was willing to give up those rights.  Sy again waived similar rights in March 2024 when he waived his right to a hearing to determine whether his outpatient status should be revoked.

Under the totality of the circumstances standard, the presence or absence of a fact in a colloquy does not necessarily resolve whether a waiver is valid or not.  (*Sivongxxay, supra*, 3 Cal.5th at p. 168.)  That the court failed to specifically mention Sy's ability to participate in jury selection in its advisement does not automatically render the waiver invalid, especially when considered with evidence suggesting Sy and his attorney discussed his right to, and waiver of, a jury trial, and his familiarity with commitment extension

6

hearings.  (Compare *People v. Jones* (2018) 26 Cal.App.5th 420, 436 [noting the significance of advising a defendant that the jury "is comprised of individuals drawn from the community"].)  We conclude the record shows his waiver was knowing, intelligent, and voluntary.

## DISPOSITION

The order extending Sy's commitment is affirmed.


DATO, J.

WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.