Filed 2/18/26  P. v. McCaleb CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAMES EDWARD McCALEB,<br><br>        Defendant and Appellant. | A171788<br><br>(Contra Costa County<br>Super. Ct. No. 05-00020386-9) |

Defendant James Edward McCaleb, who is now 72 years old, was committed to the Department of State Hospitals (DSH) nearly 50 years ago after being found not guilty by reason of insanity of robbery and assault.  In this appeal, he challenges an October 2024 order recommitting him to DSH for two years.  We agree with him that the record fails to establish that he knowingly and voluntarily waived his rights to a jury trial and therefore reverse.[1]

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In 1977, McCaleb was found not guilty by reason of insanity of one count of robbery (Pen. Code, § 211) and two counts of assault with a deadly

---

[1] In light of this conclusion, we need not address McCaleb's alternative claim that he was incorrectly advised about his right to a jury trial.

weapon (*id.*, § 245, subd. (a)), and committed to DSH.[2] McCaleb, who has schizophrenia, was briefly released into the Conditional Release Program (CONREP) on several occasions in the early 1990's. The conditional releases were unsuccessful, however, and his commitment to DSH has been extended numerous times in the ensuing decades.

In June 2024, six months before McCaleb's commitment was set to expire, the People filed a petition under section 1026.5 to extend his commitment for another two years. That September, the trial court accepted McCaleb's waiver of his right to a jury trial on the recommitment. After a bench trial the following month, the court found beyond a reasonable doubt that McCaleb posed a substantial danger of physical harm to others as a result of a mental disorder. It thus granted the People's petition and extended McCaleb's commitment for two years, through December 22, 2026.

## II.
### DISCUSSION

McCaleb claims he did not knowingly and voluntarily waive his right to a jury trial. We agree that the record does not affirmatively show he validly waived this right, requiring automatic reversal.

### A. *Additional Facts*

Before the bench trial on the petition to extend McCaleb's commitment, two hearings took place at which his right to a jury trial was discussed. McCaleb appeared at these hearings remotely, over Zoom.

At the first hearing, on September 18, 2024, McCaleb initially agreed with the trial court that he understood "that we'll be proceeding with a court trial in this case." The court then advised him about what rights he would have if a jury trial occurred. It explained to McCaleb that he could

---

[2] All further statutory citations are to the Penal Code.

2

participate in selecting 12 jurors, the prosecution would bear the burden to prove beyond a reasonable doubt that he posed a substantial risk of physical harm to others, and the jurors would hear the evidence and need to agree unanimously that the prosecution met its burden.

The trial court continued, "[N]ow instead[,] you're asking for just me to hear the evidence, not the 12 jurors. Do you understand that?" McCaleb responded, "Okay." He then indicated he understood when the court stated that it would be "the only one deciding whether the People have met their burden of proof." But when the court asked McCaleb if he had enough time to discuss with his attorney the differences between a bench trial and a jury trial, the following colloquy ensued:

> "[MCCALEB]: [My attorney] called me on the telephone, and that's the information I got that I would be on this screen. And I think next month, I go to a jury—pick out the ones that—
>
> "THE COURT: Well, what we're doing today is not picking out a jury. Is that understood to you, that you're waiving that right?
>
> "[MCCALEB]: Oh, I'm not waiving it.
>
> "THE COURT: You're not—
>
> "[MCCALEB]: I wasn't waiving it.
>
> "THE COURT: You won't waive the jury trial—
>
> "[MCCALEB]: I never said I would waive it.
>
> "THE COURT: Okay. So I want to make sure we're on the same page: Not waiving the trial but waiving the right to have a jury hear the trial. Is that what you're doing today?

3

"[McCALEB]: Well, I guess. I can do it that way too, so—

"THE COURT: Well, I want to make sure that this is something—

"[McCALEB]: I wasn't told I would do a regular trial. They said a jury trial, that I would pick out 12 people.

"THE COURT: Is that what you're asking for, a jury trial?

"[McCALEB]: Yes."

At the end of this exchange, the trial court told McCaleb, "I can't take the jury trial waiver today. I think that there needs to be more conversation. And if after that 'more conversation' you come to the same conclusion you had previously [reached about wanting a jury trial], we can just put it back on." The court set another hearing for the following week to address "if indeed [McCaleb] is, again, wishing to waive jury."

The second hearing was held on September 25, 2024. Appearing to assume that McCaleb did *not* want a jury trial, the trial court announced that the hearing's purpose was "to discuss Mr. McCaleb waiving his right to a jury trial but having this case as a court trial." The court asked McCaleb, "Is that what you understand is happening today?" McCaleb responded, "Yes. I have something to say about that when I get a chance . . . [¶] . . . [¶] I don't know what was happening, but I want to say something before you start the trial so I can have an input." The court interrupted to clarify that trial was not happening that day, explaining, "Today I'm just confirming that you don't want a jury and that you want it to be heard just in front of me." McCaleb replied, "And that's what I'm saying. I want to be sure to go on CONREP."

The trial court then asked McCaleb if he was saying he "want[ed] the two-year extension so that [he could] go to CONREP," and McCaleb replied,

4

"Yes." After McCaleb's counsel indicated she could file a petition asking for McCaleb to be conditionally released, the court surmised that McCaleb might want to "waive trial entirely," and it allowed McCaleb and his counsel to discuss the matter further in private.[3]

When the matter was recalled after McCaleb's discussion with counsel, the trial court stated, "Mr. McCaleb may wish to vacate his trial. But for now, I'm going to make sure that if we do have a trial, it is just a court trial because that does appear to be what he wants." The discussion continued as follows:

"[THE COURT]:   Mr. McCaleb, do you understand that if there were a jury trial, you would have the right to select random members from the community to hear evidence in this case?

"[MCCALEB]:   Okay.

"THE COURT:   And you would have the ability to participate in the process of selecting random members from the community to hear evidence in your case if this were a jury trial. Do you understand that?

"[MCCALEB]:   Yes, I do.

"THE COURT:   And in the end, if we had a jury trial, 12 people would be selected to hear your case. Do you understand that?

"[MCCALEB]:   Yes, ma'am.

"THE COURT:   And the People have a burden of proof in this case beyond a reasonable doubt [to prove] that

---

[3] The same day as the hearing, McCaleb filed a petition for release into CONREP under section 1026.2. On December 27, 2024, after this appeal was initiated, the trial court granted the petition. The record does not reveal McCaleb's current custodial status.

you represent a substantial risk of physical harm to others, and those 12 jurors would have to hear the evidence and all agree that the People met their burden. [¶] Do you understand that that would be your right in a jury trial?

"[MᴄCALEB]: All right. I agree.

"THE COURT: And instead, if we do proceed with a trial, you're asking for just me, the Court, to hear all of the evidence. Do you understand that?

"[MᴄCALEB]: Yes, Your Honor.

"THE COURT: And I'm the only one deciding whether the People have met their burden of proof. Do you understand that?

"[MᴄCALEB]: What?

"THE COURT: If we have the trial, I'm the only one hearing evidence in deciding your case. Do you understand that?

"[MᴄCALEB]: Yes, ma'am. Okay."

The trial court then asked whether McCaleb had sufficient time to "discuss the issue of jury trial versus court trial" with his counsel. McCaleb responded, "Yes." The court also asked whether he had "any questions about a jury trial," at which point McCaleb said, "Well, the jury trial, I don't know people out there. I don't know what they did or nothing." The court interrupted him, stating, "You don't have any questions, though, about your waiver of a right to have a jury hear this case, do you?" McCaleb responded, "No."

The trial court then solicited the agreement of McCaleb's counsel and the prosecutor to proceed with a bench trial. The court said it was "satisfied

that [McCaleb] ha[d] knowingly, intelligently, and voluntarily waived his rights to a jury trial." Though admitting the "process was a little bit more confusing than usual," the court stated it "underst[ood] that Mr. [Mc]Caleb's confusion really [came] from his feelings on whether he want[ed] a trial at all." The court concluded by reiterating that it was "satisfied that [McCaleb] d[idn't] want a jury trial."

> ### B.    Analysis

"Where a criminal defendant has been found to have been insane at the time the offense was committed, 'unless it appears to the [trial] court that the sanity of the defendant has been recovered fully,' the court may order the defendant committed to [DSH] or any other appropriate facility for care and treatment. (§ 1026, subd. (a).)" (*People v. K.P.* (2018) 30 Cal.App.5th 331, 338.) The commitment order must specify "the maximum term of commitment," which is defined as "the longest term of imprisonment which could have been imposed for the offense . . . of which the person was convicted." (§ 1026.5, subd. (a)(1).)

A person committed to DSH who completes the maximum term of commitment must be released unless, prior to the expiration of that term, the prosecution files a petition seeking to extend the commitment by two years "and demonstrates that the person, 'by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others.' " (*People v. Superior Court (Frezier)* (2020) 54 Cal.App.5th 652, 661–662; § 1026.5, subd. (b)(1)–(2).) Upon the filing of such a petition, the person is entitled to a jury trial, unless that right is "waived by both the person and the prosecuting attorney." (§ 1026.5, subd. (b)(4).)

To proceed with a bench trial instead of a jury trial in a recommitment proceeding, the trial court "must obtain a personal waiver of that right from

the defendant unless the court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision." (*People v. Tran* (2015) 61 Cal.4th 1160, 1163.)  Here, neither party contends that McCaleb lacked the capacity to knowingly and voluntarily waive his right to a jury, so the only question before us is whether he personally waived it.

We uphold a jury-trial waiver only " ' "if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the circumstances." ' [Citation.]  We do not start with a presumption of validity that may only be rebutted by signs of a defendant's confusion or unwillingness in entering a waiver.  Instead, a reviewing court satisfies itself of a legitimate waiver only when the record affirmatively demonstrates it was knowing and intelligent." (*People v. Daniels* (2017) 3 Cal.5th 961, 991.)  The denial of a defendant's right to a jury trial in a recommitment proceeding, including through the "acceptance of an invalid jury trial waiver[,] . . . is not susceptible to ordinary harmless error analysis and automatically requires reversal." (*People v. Tran, supra,* 61 Cal.4th at p. 1169.)

While we acknowledge that some portions of the record suggest McCaleb wanted to waive his right to a jury trial, others suggest he did not. Considering the totality of the circumstances, we cannot conclude that the record affirmatively establishes that he knowingly waived his right to a jury trial.  Accordingly, we must reverse.

We begin by observing that near the end of the September 18 hearing, McCaleb indicated in plain terms that he did not want to waive his right to a jury trial.  The trial court then indicated that further discussion was necessary and scheduled another hearing.  Yet at that follow-up hearing on

8

September 25, the court assumed, for reasons the record does not make clear, that McCaleb *did* want to waive the right.

This assumption affected the nature of the subsequent exchange between the trial court and McCaleb, which as a whole suggests that the two did not have a meeting of the minds. (See *People v. Daniels*, *supra*, 3 Cal.5th at p. 995 [an "utterance of bewilderment might [weigh] in favor of our finding [a] waiver to *not* be knowledgeable"].) Some of the confusion might have resulted because the court surmised that McCaleb wanted to avoid *any* trial, as his primary goal seems to have been his release into CONREP. We credit the court for trying to sort these issues out with McCaleb, and we do not minimize the challenges trial courts face in trying to explain legal principles to people who have a documented history of mental illness. Still, when the court went from explaining McCaleb's jury-trial right to explaining how a bench trial would be different, it stated that "if we do proceed with *a trial*, you're asking for just me, the Court, to hear all of the evidence." (Italics added.) While someone with legal training would likely have understood that "a trial" meant a *bench* trial, McCaleb could have thought the court meant it would hear the evidence in any trial—jury or non-jury. Thus, his agreement that he understood the court's statement does not affirmatively establish that he was knowingly waiving his right to a jury.

Furthermore, at no time did the trial court attempt to clarify the confusion with any direct question asking McCaleb for his choice between a bench or jury trial. Even the Attorney General concedes that McCaleb's "waiver of a jury trial must be pieced together from his statements along the way." Although we disagree with McCaleb that "it was a foregone conclusion [by the court] that [he] was choosing a bench trial and [the court] conveyed that he had no other option," we cannot be certain on this record that the

9

court and McCaleb were ever, in the court's words, "on the same page" regarding his desire to waive his right to a jury trial. And because we cannot be confident that McCaleb actually waived the right, we do not ascribe much significance to his final indication that he did not have any questions about waiving the right.

In sum, under the totality of the circumstances, the record does not affirmatively demonstrate that McCaleb knowingly and voluntarily waived his right to a jury. As a result, the order extending his commitment to DSH cannot stand.

## III.
### DISPOSITION

The trial court's October 7, 2024 recommitment order is reversed. The matter is remanded for further proceedings consistent with this decision.

_____

Humes, P. J.


WE CONCUR:



_____

Banke, J.



_____

Smiley, J.



*People v. McCaleb*  A171788


11