Filed 10/23/20

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ARMANDO FORD,<br><br>　　　Defendant and Appellant. | B300043<br>(Los Angeles County<br>Super. Ct. No.  ZM028642-01) |

APPEAL from an order of the Superior Court of Los Angeles County, James Bianco, Judge.  Conditionally reversed and remanded with directions.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jaime L. Fuster and

Joseph P. Lee, Deputy Attorneys General, for Plaintiff and
Respondent.

---

## INTRODUCTION

The People petitioned to extend appellant Armando
Ford's involuntary commitment under Penal Code section
1026.5, and the trial court set the matter for a pre-trial
hearing.[1]  Despite the trial court's order that appellant be
transported to the hearing, the state hospital failed to do so.
In appellant's absence, his appointed counsel presented a
psychiatrist's single-paragraph letter opining that appellant
lacked the capacity to decide whether to waive his right to a
jury trial.  Based on this letter, the trial court found
appellant incompetent to decide whether to waive his right
to a jury.  Appellant's counsel then waived his right to a jury
on his behalf.  Following a bench trial, the court found the
People's petition true and extended appellant's commitment.

On appeal, appellant contends the trial court erred by,
inter alia, deciding in his absence that he was incompetent
to decide whether to waive this right, and by accepting his
counsel's waiver.  The Attorney General does not dispute
that the court erred but argues any error was harmless
beyond a reasonable doubt.  We conclude appellant's absence
at the proceeding was prejudicial.  We therefore

---

[1]     Undesignated statutory references are to the Penal Code.

conditionally reverse the trial court's extension order and remand for further proceedings.

## BACKGROUND

A. *Appellant's Initial Commitment and the People's Extension Petition*

In 2013, appellant pleaded not guilty by reason of insanity (NGI) to attempted kidnapping, was found legally insane at the time of his offense, and was committed to a state hospital under section 1026.[2] In February 2019, a few months before his maximum commitment date, the People petitioned to extend appellant's commitment by two years under section 1026.5, alleging he represented a substantial danger of physical harm to others due to his mental illness.

The trial court held an arraignment hearing in appellant's absence and appointed two psychiatrists to examine him: Dr. Kory Knapke for the defense and Dr. Gordon Plotkin for the People. The court then set the matter for a pre-trial hearing on April 25, 2019, and ordered the state hospital to transport appellant to the hearing. Appellant's counsel informed the court that appellant would likely demand a jury trial.

---

[2] As to the circumstances of his offense, appellant claimed he was experiencing hallucinations that led him to believe a car was on fire, prompting him to attempt to "'rescue'" a child from inside the vehicle.

B. *The April 25 Pre-Trial Hearing, Dr. Knapke's Letter, and Counsel's Waiver of Appellant's Right to a Jury Trial*

Despite the court's order, the state hospital failed to transport appellant to the April 25 hearing, and the hearing proceeded in his absence. At the hearing, appellant's counsel presented a single-paragraph letter from Dr. Knapke, opining that appellant lacked the capacity to decide whether to waive his right to a jury trial. This letter stated: "As part of my evaluation that I conducted on [appellant] on April 19, 2019, at Patton State Hospital (PSH), I also addressed the patient's capacity to waive jury. [Appellant] appeared to be very confused during this interview about the nature of the upcoming proceedings. Throughout this clinical interview, he argued about evidence against him in his committing offense as if he believed that his upcoming court proceedings in the mental health court are related to litigation involving the committing offense. He insisted that his attorney is not following up with the evidence to exonerate him from the crime itself. It became clear during this interview that [appellant] is confused and disorganized in his thinking and does not understand basic courtroom proceedings, especially in regards to the nature of his upcoming court proceedings. He believes that a jury should listen to new evidence involved in the underlying crime because he believes they will find him not guilty. I do not believe [appellant] has the capacity to waive jury and he remains very psychotic and heavily medicated."

4

Based on Dr. Knapke's letter, the trial court found appellant incompetent to decide whether to waive his jury rights. Appellant's counsel then waived appellant's right to a jury on his behalf, and the People followed suit. Appellant's counsel requested that the court set trial for a date the state hospital could transport appellant because "[h]e likes to appear in person." The court agreed, set the matter for a bench trial on May 30, 2019, and ordered the state hospital to transport appellant to court for the trial.

C. *The Trial to Extend Appellant's Commitment*

1. *The Prosecution Case*

Dr. Plotkin was the People's sole witness. He interviewed and evaluated appellant on April 15, 2019, about six weeks before the trial. Dr. Plotkin testified that appellant had been diagnosed with schizophrenia, and displayed symptoms consistent with that diagnosis at the time of their interview, including disorganized thoughts, paranoia, and delusions. According to Dr. Plotkin, appellant's thinking was so disorganized that he had difficulty staying on track and answering questions without going off-topic. Dr. Plotkin stated that appellant had very poor insight into his mental illness, and testified that when he asked appellant if he believed he needed medication, appellant suggested he did not.

Dr. Plotkin referenced several disciplinary and behavioral issues appellant had during his commitment, including incidents in which he had allegedly assaulted or

attempted to assault others.  Based on his evaluation, Dr. Plotkin opined that appellant was a substantial danger of physical harm to others and could not control his impulses due to his mental disorder.

2. *The Defense Case*

Appellant testified on his own behalf.  In response to his counsel's questioning, he acknowledged he had a mental disorder; he was initially diagnosed with schizophrenia but his diagnosis had been changed to "bipolar schizoaffective." According to appellant, he had heard voices in the past, but the medication he was taking was helping, and he no longer heard voices.  He reported that with the medication, he was able to be coherent with his peers, talk to his doctor, and attend all his group meetings.

Appellant described his plan for release from the hospital:  his cousin in Sonoma County would help him go to the social security office, obtain Medi-Cal, and get his medications.  His backup plan involved leaving California and going back to his family in Georgia, where he would seek the assistance of Georgia's Department of Behavioral Health.

When asked about the behavioral incidents during his commitment, appellant offered various explanations, and asserted that he would never hit anyone and was not dangerous because he had "a soft heart."  Appellant ended his testimony by addressing the court, stating that he knew he had a mental illness, but that he also knew it could be

6

treated with medication and therapy, and that he would rely on his family's help.

D. *The Trial Court's Ruling*

Following the hearing, the trial court found the petition true and extended appellant's commitment by two years. In so doing, the court told appellant he was doing better compared to previous times he had been before the court, and remarked, "In fact, I suspect you're doing better than Dr. Plotkin -- he's nodding his head -- even better than when he saw you about six weeks ago." Nevertheless, the court concluded appellant was not ready to be released and ordered his continued commitment. Appellant timely appealed, challenging the trial court's finding that he was incompetent to decide whether he wanted a jury trial, and its acceptance of his counsel's jury waiver, all in his absence.

**DISCUSSION**

A. *Applicable Law*

A criminal defendant found not guilty by reason of insanity may be committed to a state medical facility for a period equal to the maximum sentence the court could have been imposed for the underlying offense. (§ 1026.5, subd. (a)(1).) Before this term expires, the prosecuting attorney may file a petition with the superior court seeking to extend the defendant's commitment by two years. (§ 1026.5, subd. (b)(2), (8).) After the prosecutor files an extension petition, the court must "advise the person named in the petition of

the right to be represented by an attorney and of the right to a jury trial." (*Id.*, subd. (b)(3).) Trial on the petition "shall be by jury unless waived by both the person and the prosecuting attorney." (*Id.*, subd. (b)(4).) The NGI defendant "shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings" and "[a]ll proceedings shall be in accordance with applicable constitutional guarantees." (*Id.*, subd. (b)(7).)

In *People v. Tran* (2015) 61 Cal.4th 1160, 1166 (*Tran*), our Supreme Court held that under section 1026.5, the trial court must advise an NGI defendant personally -- in court and on the record -- of the right to a jury trial on an extension petition. Similarly, the court held that only the defendant himself or herself may waive the right to a jury, unless there is substantial evidence that the defendant lacks the capacity to make that decision. (*Tran, supra*, at 1167.) Only if substantial evidence suggests the defendant is incompetent to decide whether to waive a jury will the defendant's counsel control that decision. (*Ibid.*) "In this context, evidence is substantial when it raises a reasonable doubt about the defendant's capacity to make a knowing and voluntary waiver, and the trial court's finding of a reasonable doubt must appear on the record." (*Ibid.*)

A knowing jury waiver "requires an appreciation of the nature of the jury trial right and the consequences of forgoing this right." (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 171 (*Sivongxxay*), italics omitted.) Competence to make the decision, however, requires only the "capacity" to

8

comprehend it (*Tran, supra*, 61 Cal.4th at 1167); it does not require a preexisting understanding of the meaning of a jury trial and the consequences of any waiver. Indeed, section 1026.5's requirement of a personal advisement of the right recognizes that the NGI defendant may not be sufficiently aware of it, and it is intended to allow even an uninitiated defendant to make an informed choice. (See *People v. Blackburn* (2015) 61 Cal.4th 1113, 1125 (*Blackburn*) ["The purpose of an advisement is to inform the defendant of a particular right so that he or she can make an informed choice about whether to waive that right"].)

B. *Analysis*

Appellant contends the trial court violated his constitutional due process right to be present at the April 25 hearing at which it found him incompetent to decide if he wanted a jury trial.[3] The Attorney General does not dispute that appellant was denied his constitutional right to be present, but argues that any error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) because appellant's presence at the hearing would not have changed the outcome. Under

---

[3] Courts have recognized that persons subject to civil commitment have a due process right to be present at critical stages of the proceedings. (See, e.g., *People v. Wilkinson* (2010) 185 Cal.App.4th 543, 547-550 ["mentally retarded" individual]; *People v. Fisher* (2009) 172 Cal.App.4th 1006, 1013 [mentally disordered offender].)

9

*Chapman*, it is the People's burden to show that any federal constitutional error was harmless beyond a reasonable doubt. (*People v. Jackson* (2014) 58 Cal.4th 724, 748.)

We are unpersuaded by the Attorney General's contention that appellant's presence would have made no difference in the court's assessment of appellant's capacity to waive his right to a jury trial. In enacting section 1026.5, the Legislature envisioned a pre-trial hearing at which the NGI defendant is not only present but is also addressed directly by the court concerning his or her right to a jury trial. (See § 1026.5, subd. (b)(3); *Tran, supra*, 61 Cal.4th at 1166.) This procedure provides an opportunity for meaningful interaction between the defendant and the court on the topic of the defendant's right to a jury. The court's direct observation of the NGI defendant may be the most relevant evidence of the defendant's competence to make an informed decision. (Cf. *Conservatorship of Pamela J.* (2005) 133 Cal.App.4th 807, 824 [court will be hard-pressed to decide whether patient is competent to refuse electroconvulsive therapy unless patient is present at hearing]; *Blackburn, supra*, 61 Cal.4th at 1131 [discussing case where civil-commitment defendant told trial court that invisible police were sexually assaulting him as he spoke, and noting that court's direct observation provided ample basis to doubt defendant's capacity to make knowing waiver decision]; *In re R.V.* (2015) 61 Cal.4th 181, 199 [in competency hearing, trier of fact may observe person's behavior and interactions with counsel].) That the court found appellant incompetent in his

10

absence may have deprived him of the opportunity to present his strongest evidence of his own competence.

Appellant's subsequent testimony at trial suggests that had he been present at the April 25 hearing, he might well have been able to dispel any doubt about his capacity to understand the jury-waiver decision. His testimony was coherent and responsive to the questions he was asked. He stressed he was not dangerous, a necessary element for the extension of his commitment, and emphasized favorable facts, such as his regular attendance at group meetings. And at the end of his testimony, he addressed the court with a closing statement consistent with the theme of his testimony, in a final attempt to persuade the court that he should be released. The court itself was apparently impressed by appellant's testimony, noting his improvement from prior times he had been before the court. Appellant's testimony showed, at the very least, that he understood who the decisionmaker was, what was being decided, and what considerations were pertinent -- factors that would have been highly relevant to an informed jury-waiver decision. (See *Sivongxxay*, *supra*, 3 Cal.5th at 171.) Appellant's presentation at trial could have persuaded a court that he was fully competent to decide on his own whether he wanted a jury trial.

In attempting to show that appellant's absence from the April 25 hearing was not prejudicial, the Attorney General makes two arguments based on *Tran*. Neither is persuasive. First, the Attorney General contends our

11

Supreme Court in *Tran* did not contemplate contested competency hearings.  This contention is misguided.  In *Tran*, the trial court accepted a jury waiver by an NGI defendant's counsel without making an on-the-record incompetence finding.  (*Tran, supra*, 61 Cal.4th at 1164.)  Our Supreme Court held that absent such a finding, an NGI defendant must personally waive the right to a jury.  (*Id.* at 1167.)  However, it noted that the trial court and the parties, relying on prior law, may have failed to make a record of the defendant's personal waiver or his incompetence to make it.  (*Id.* at 1170.)  Accordingly, the *Tran* court remanded for the People to submit evidence, if any, that the defendant had made a personal waiver or that he lacked the capacity to make it "at the time of defense counsel's waiver."  (*Ibid.*)  This procedure was meant to fill a potential gap in the record, rather than to model competency hearings in future cases.

Second, the Attorney General claims that under *Tran*, "any error" in accepting counsel's waiver of a jury may be deemed harmless "'if the record affirmatively shows that there was substantial evidence that the defendant lacked that capacity [to make a knowing and voluntary waiver] at the time of defense counsel's waiver.'"  The Attorney General again misreads *Tran*.  There, our Supreme Court stated that "[a] trial court's acceptance of counsel's waiver *without an explicit finding of substantial evidence* that the NGI defendant lacked the capacity to make a knowing and voluntary waiver may be deemed harmless if the record

12

affirmatively shows that there was substantial evidence that the defendant lacked that capacity at the time of defense counsel's waiver." (*Tran, supra*, 61 Cal.4th at 1170, italics added.) *Tran* does not stand for the proposition that violating the defendant's right to be present and thus slanting the record against him or her will be harmless merely because the same incomplete record raises doubts about the defendant's competence.

The Attorney General emphasizes that the trial court credited Dr. Knapke's opinion that appellant lacked the capacity to make a knowing waiver. But the fact that the court credited an expert's uncontradicted opinion does not mean it would not have reached a different conclusion had contrary evidence been available to it. (*In re R.V.*, *supra*, 61 Cal.4th at 216 [court in competency proceeding need not defer to expert's opinion; "'"To hold otherwise would be in effect to substitute a trial by 'experts' for a trial by [the finder of fact]"'"].)

Nor does Dr. Knapke's single-paragraph letter inspire such confidence in his opinion that appellant could not have dispelled any doubt about his competence. The letter focused almost exclusively on appellant's misapprehension of the purpose of the upcoming proceeding, including his desire for a jury to consider evidence relating to his underlying offense.[4]  As explained, however, in the context of appellant's

---

[4]      As noted, Dr. Knapke's letter stated that appellant "[was] very confused . . . about the nature of the upcoming proceedings," (*Fn. is continued on the next page*.)

13

competency, the relevant question was not whether he *then* possessed the necessary knowledge to make an informed waiver decision, but whether he had the *capacity* to understand the decision, once informed of his right to make it. (See *Tran, supra,* 61 Cal. 4th at 1167; *Blackburn, supra,* 61 Cal.4th at 1125.)

Moreover, even assuming appellant was incompetent to make a jury-waiver decision at the time of his interview with Dr. Knapke, we could not conclude he would necessarily have been in a similar state almost a week later, at the time of the April 25 hearing. Indeed, Dr. Plotkin, the People's expert, apparently agreed after appellant's testimony that his mental state had significantly improved from the time of their April 15 interview, 10 days before the pretrial hearing at issue. On the record before us, we are not confident the

---

"argued about evidence against him in his committing offense as if he believed that his upcoming court proceedings in the mental health court are related to litigation involving the committing offense," "insisted that his attorney is not following up with the evidence to exonerate him from the crime itself, "does not understand basic courtroom proceedings, especially in regards to the nature of his upcoming court proceedings," and "believes that a jury should listen to new evidence involved in the underlying crime because he believes they will find him not guilty." He further described appellant as "very psychotic and heavily medicated."

violation of appellant's right to be present at the April 25 hearing was harmless beyond a reasonable doubt.[5]

---

[5] We need not consider whether a jury trial might have yielded a more favorable outcome for appellant. Accepting an invalid jury-trial waiver results "in a complete denial of the defendant's right to a jury trial," and thus "automatically requires reversal." (*Tran, supra*, 61 Cal.4th at 1169.)

## DISPOSITION

The order extending appellant's commitment is conditionally reversed, and the matter is remanded for the trial court to conduct a hearing in appellant's presence to determine his current competence to waive his right to a jury trial.  The extension order shall be reinstated if:  (1) the court again finds appellant incompetent to waive his jury rights; (2) appellant knowingly and voluntarily waives his right to a jury; or (3) a jury finds the People's petition true.

**CERTIFIED FOR PUBLICATION**


MANELLA, P. J.


We concur:


COLLINS, J.


CURREY, J.

16