Filed 9/12/24  Conservatorship of Sandra L. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Conservatorship of the Person of SANDRA L. | |
| SONOMA COUNTY PUBLIC CONSERVATOR, as Conservator, etc.,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>SANDRA L.,<br><br>        Objector and Appellant. | A169184<br><br>(Sonoma County Super. Ct. No. SPR88254) |

Appellant Sandra L. appeals from an order reestablishing her conservatorship for a one-year period following a bench trial after which the trial court found her gravely disabled within the meaning of the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.).[1]  Sandra L. challenges this order on the grounds that (1) substantial evidence did not support the trial court's finding that she lacked the capacity to knowingly and voluntarily waive her right to a jury trial and (2) the trial court violated the LPS Act and her due process rights by failing to hold a separate

_____

[1] Unless otherwise stated, all statutory citations herein are to the Welfare and Institutions Code.

evidentiary hearing and to consult with her on the issues of placement, disabilities and powers of the conservator.  We affirm.

## I.    *Petition for Reappointment of Conservator.*

On July 31, 2023, respondent Sonoma County Public Conservator (Public Conservator) filed a petition in superior court for reappointment of a conservator of the person of Sandra L. under the LPS Act due to her grave mental disability.  The petition was accompanied by declarations from Drs. Fong and Miller recommending the reappointment of the conservator.  According to these declarations, Sandra L., diagnosed with schizoaffective disorder, had a severe, persistent mental disorder that rendered her incapable of carrying out a reasonable plan to provide for her own food, clothing and shelter.

## II.    *Contested Conservatorship Hearing and Bench Trial.*

The contested conservatorship hearing began August 30, 2023, and was then continued to September 6, 2023.  On both dates, Sandra L., represented by appointed counsel, requested a jury trial.  The court asked to hear from Dr. Bravo, the psychiatrist who had treated Sandra for over 20 years.  At the court's request, Dr. Bravo assessed Sandra in private to determine whether she had the capacity to make a knowing and intelligent decision as to whether she preferred a bench trial or a jury trial.

Dr. Bravo opined that Sandra L. understood the difference between a bench trial and a jury trial but lacked the capacity to elect a jury trial because she was paranoid and "wildly delusional" and believed everyone, including Dr. Bravo and the trial judge, was against her.  He further opined that Sandra would not tolerate a daylong jury trial and that the process would likely negatively impact her stability and well-being.

2

The trial court found, based on Dr. Bravo's testimony, that Sandra L. lacked the capacity to elect a bench trial or a jury trial, then deferred to her counsel to make the decision for her. Sandra's counsel elected a bench trial based on his conversations with Sandra.

This bench trial was held October 4, 2023. Dr. Bravo testified that Sandra suffered from schizophrenia. Currently, Sandra had delusions and disorganized thinking, and lacked insight into her mental illness. Sandra denied being mentally ill and had a history of noncompliance with her medication. Dr. Bravo opined that she would not take her medication if she were released and would likely become homeless.

Sandra L. then testified that she planned to live with her boyfriend if not conserved.[2] She would make her own clothes and use social security money to buy food. She described herself as an architect, taxicab driver and physician with grown children who were doing quite well.

### III. *Order Reestablishing the LPS Act Conservatorship.*

Following the bench trial, the court found Sandra L. gravely disabled within the meaning of the LPS Act and reappointed the public conservator as conservator over her person for one more year. The court also prohibited Sandra from possessing a driver's license or firearms and deprived her of the right to refuse or consent to medical treatment related to her disability. The court then ordered Sandra placed in a closed, locked facility (IMD) as the least restrictive placement. This appeal followed.

---

[2] Dr. Bravo testified that Sandra's boyfriend had not made contact with anyone on Sandra's treatment team and that Sandra had been unable to reach him.

3

## DISCUSSION

Sandra L. raises the following issues for review: (1) Was the trial court's finding that she lacked the capacity to make a knowing and voluntary waiver of her right to a jury trial supported by substantial evidence? (2) Did the trial court violate the LPS Act and Sandra L.'s due process rights by failing to hold a separate evidentiary hearing and consult with her on the issues of placement, disabilities, and powers of the conservator? We address each issue in turn.

### I. *The LPS Act.*

"The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental disorder, are dangerous or gravely disabled. (§ 5150 et seq.) The Act authorizes the superior court to appoint a conservator of the person for one who is determined to be gravely disabled (§ 5350 et seq.), so that he or she may receive individualized treatment, supervision, and placement (§ 5350.1). As defined by the Act, a person is 'gravely disabled' if, as a result of a mental disorder, the person 'is unable to provide for his or her basic personal needs for food, clothing, or shelter.' (§ 5008, subd. (h)(1)(A).)" (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142.)

### II. *Substantial evidence supported the finding that Sandra L. lacked the capacity to elect a jury trial.*

The LPS Act affords a proposed conservatee such as Sandra L. the right to a jury trial. (Welf. & Inst. Code, § 5350; Prob. Code, § 1827.) Generally, to proceed with a bench trial, the court must receive a personal waiver of this jury trial right from the proposed conservatee. (*Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1249.) A valid jury trial waiver in the LPS Act context is one that is knowing, intelligent and voluntary. (*People v. Daniels* (2017) 3 Cal.5th 961, 1002; see *Conservatorship of Joanne R.* (2021) 72

4

Cal.App.5th 1009, 1017 (*Joanne R.*) ["case law governing criminal proceedings provides guidance for LPS civil commitment proceedings"].) If, however, as here, "the court finds substantial evidence—that is, evidence sufficient to raise a reasonable doubt— that the defendant lacks the capacity to make a knowing and voluntary waiver [of the right to a jury trial]," the court may defer to defense counsel to control the waiver decision. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1116.)

"Generally, with respect to civil commitments, the failure of a court to obtain a valid jury trial waiver where required by statute 'denies the defendant his or her statutory right to a jury trial,' and is a ' "miscarriage of justice" within the meaning of California Constitution, article VI, section 13 [that] requires reversal without inquiry into the strength of the evidence in a particular case.' (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1132–1133 [citations] [failure to obtain valid jury trial waiver from mentally disordered offender in civil commitment proceeding was reversible error]; [citations]." (*Joanne R., supra*, 72 Cal.App.5th at pp. 1016–1017.)

On appeal, we review the trial court's findings for substantial evidence—that is, evidence sufficient to raise a reasonable doubt that Sandra L. lacked the capacity to make a knowing and voluntary waiver of her right to a jury trial. (*People v. Tran* (2015) 61 Cal.4th 1160, 1163.) In doing so, we review the record in a view most favorable to the trial court's findings, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the judgment. (*Conservatorship of B.C.* (2016) 6 Cal.App.5th 1028, 1033.) The testimony of one witness may be sufficient to support the findings. (*Id.* at p. 1034.)

In this case, the evidence was sufficient to raise a reasonable doubt about Sandra L.'s capacity to make a knowing and voluntary jury trial

waiver.  Dr. Bravo, who had treated Sandra for over 20 years, testified that she was currently "wildly delusional, has grandiose delusions. · She has—she believes the judge and myself and every—everyone else in authority is—is—has it against her. [¶] She says she's been trained as a lawyer and a physician herself. . . .  [T]he reason she wants a jury trial rather than a court trial is because she feels [the trial judge is] biased because of the last trial, court trial, that occurred."

Dr. Bravo added that Sandra seemed to understand there was a difference between a court trial and a jury trial but that "she's never had a jury trial so she doesn't under—you know, she isn't sure what the outcome would be . . . ."  When the trial court then asked whether Dr. Bravo believed Sandra "[has] the capacity to understand what [a jury trial] is," he responded that she did not.  Further, when Sandra's counsel asked him to explain his answer, Dr. Bravo replied:  "[S]he has severe paranoia, severe delusions, severe misinterpretation and beliefs about this whole process. · She denies that she's on a conservatorship, and she—she doesn't understand the—the whole process. [¶] . . . [¶] . . . [I]n the context of what she thinks she's—a jury trial will accomplish, it will still be held by a—I assume by a judge that she considers biased and—and—against her, so I—I don't—I don't think she'll—she'll be satisfied with—with the jury process."

On appeal, Sandra L. argues, based on Dr. Bravo's testimony, that she had the capacity to exercise her jury trial rights because she appreciated the difference between a court trial and a jury trial.  The issue, however, is not simply whether the proposed conservatee is able to understand the difference between a bench trial and a jury trial.  Rather, the issue is whether the proposed conservatee is able to understand the nature and purpose of the proceedings taken against him or her and to assist counsel in the conduct of

6

his or her defense in a rational manner.  (*People v. Tran, supra*, 61 Cal.4th at p. 1167; cf. *Drope v. Missouri* (1975) 420 U.S. 162, 171 [43 L.Ed.2d 103] ["It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial"].)  Based on Dr. Bravo's testimony, the trial court could reasonably find that Sandra lacked the capacity to truly understand the nature of the LPS Act proceedings and rationally assist her counsel at the conservatorship reappointment hearing.  (*Conservatorship of B.C., supra*, 6 Cal.App.5th at p. 1034.)

Because there was evidence before the trial court sufficient to raise a reasonable doubt about Sandra L.'s capacity to make a knowing and voluntary waiver of her right to a jury trial, the trial court appropriately allowed Sandra's attorney to exercise this right on her behalf.  (*People v. Tran, supra*, 61 Cal.4th at pp. 1163, 1167.)

## III. *The court properly considered issues of placement, disabilities and conservator powers.*

Sandra L. lastly argues the trial court erred by not holding a formal hearing or consulting with her on the issues of placement, disabilities and conservator powers.  (See *Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 612–613 (*Christopher A.*) [conservatee's due process rights violated when the court adopted a stipulated judgment approved by the conservatee's attorney without consulting the conservatee and after no formal hearing on the issues of placement, disabilities, and powers of the conservator].)  We find no such error.

Section 5005 provides:  "Unless specifically stated, a person complained against in any petition or proceeding initiated by virtue of the provisions of this part shall not forfeit any legal right or suffer legal disability by reason of

7

the provisions of this part."  Section 5357 sets forth various legal disabilities a conservator may seek to have imposed, including limitations on the right to possess a driver's license, possess a firearm, and refuse medical treatment. (§ 5357, subds. (a), (d), (f).)  "A finding of grave disability alone is not sufficient to justify the imposition of the special disabilities enumerated in section 5357.  (§ 5005; [citation].)  The conservatee retains the rights and privileges covered by the special disabilities unless the court, after making a finding of incapacity to support the imposition of the special disabilities, imposes those disabilities and confers the corresponding authority on the conservator."  (*Conservatorship of D.C.* (2019) 39 Cal.App.5th 487, 494.)

"The party seeking conservatorship has the burden of producing evidence to support the disabilities sought, the placement, and the powers of the conservator, and the conservatee may produce evidence in rebuttal." (*Christopher A., supra*, 139 Cal.App.4th at p. 612.)

In this case, the trial court properly followed these guidelines. Specifically, the court decided the issue of grave disability, as well as the issues of placement, prohibitions and the conservator's powers, following a bench trial at which both Sandra L. and her treating psychiatrist, Dr. Bravo, testified.  When, as here, the preliminary issue of grave disability was decided by the court and not a jury, we find nothing in the LPS Act that required the court to hold a separate, bifurcated hearing on the related issues of placement, disabilities, and conservator powers before issuing its final order reestablishing the conservatorship.  (See *Christopher A., supra*, 139 Cal.App.4th at pp. 610, 612 [while a conservatee has the right to a jury trial on the issue of grave disability, the issues of placement, disabilities, and conservator powers are "solely the province of the court"].)  To the contrary, the relevant case law, including Sandra's authority, *Christopher A.*, simply

8

holds, "The court must *separately* determine the duties and powers of the conservator, the disabilities imposed on the conservatee, and the level of placement appropriate for the conservatee.  (§§ 5357, 5358.)" (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165–166, italics added (*George H.*); accord, *Christopher A., supra*, at pp. 612–613.)  The trial court here did just that.

In particular, the court heard testimony from Dr. Bravo that Sandra L. suffered from schizophrenia that required medication but that she denied being ill or needing medication and could not be trusted to take her medication if not conserved.  Dr. Bravo also testified that Sandra, during her recent interview, exhibited grandiose delusions and disorganized thinking.  In his opinion, the least restrictive placement appropriate for Sandra under these circumstances was an IMD.

The court also heard from Sandra L., who testified that, among other things, "The men who are at Creekside Manor [where she was placed] . . . attack me in the shower," and, "I'm an architect, a taxicab driver and a physician.·I had scholarships to medical school when I was 16 years old, and I worked in hospitals.·My family even started hospitals. [¶] Did you ever hear about the hospital that the Masons started?·It's the largest hospital in the United States and all over.·They even offered me a job there because of how I help people to get better, and I help the public."

Afterward, the trial court consulted with Sandra regarding her desire not to return to Creekside Manor, before "finding that currently an IMD is the least restrictive placement."  The court also advised Sandra that she would be able to discuss her particular placement at a later time with the conservator.  The court then prohibited Sandra from possessing a driver's license or firearms and denied her the right to consent to or refuse medication

9

and other treatment related to her grave disability.  Last, the court authorized the conservator to (1) place Sandra in any facility described in section 5358 and (2) consent to and require her to receive care and treatment, including hospitalization and medication, related to her grave disability.

The testimony presented at the trial and other evidence before the court amply supported its findings and order on the issues of Sandra's placement, prohibition and conservator powers.  Nothing more was required. (See *George H., supra*, 169 Cal.App.4th at p. 165 [rejecting the conservatee's argument that "a specific, on-the-record statement of the reasons for each order is required"].)

## DISPOSITION

The October 4, 2023, order reestablishing Sandra L.'s conservatorship for a one-year period is affirmed.

Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.

A169184/*Sonoma County Public Conservator v. Sandra L.*

10