Filed 10/2/24  P. v. Ramirez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>  v.<br><br>JAY ELIJAH RAMIREZ,<br><br>        Defendant and Appellant. | B333229<br><br>(Los Angeles County<br> Super. Ct. No. BA480321) |

APPEAL from judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Jay Elijah Ramirez shot and killed Javier Munoz in retaliation for Munoz previously assaulting defendant's fellow gang member. Defendant was convicted of first degree murder and felon in possession of a firearm (Pen. Code, §§ 187, subd. (a), 29800, subd. (a)(1)).[1]

On appeal, defendant raises one contention he did not raise below. He contends the trial court prejudicially erred by admitting gang evidence without requiring the prosecution to prove the gangs at issue (Loco Park and Citywide Vandals) constituted "criminal street gangs" as defined under a gang enhancement statute (§ 186.22) not charged by the prosecution. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Prosecution Evidence**

In 2019, Nachelle Sodetani and Javier Munoz were living together in a wooden shed Munoz had built in an alleyway claimed by the Loco Park gang. Munoz, a member of a rival gang called Citywide Vandals, was shot and killed inside the wooden shed on August 10, 2019.

Two law enforcement officers testified about gang activity in the area—Los Angeles Police Department Officer Chad Heistirmann and Detective Jose Calzadillas, the investigating officer in this case. Both officers had been assigned and worked on gang enforcement in the area. Officer Heistirmann testified about Loco Park's history, territory, symbols, and criminal activities. He also discussed the Citywide Vandals, which

---

[1]    Subsequent unspecified references to statutes are to the Penal Code.

2

originated as a tagging group that "morphed" into an actual street gang. Citywide Vandals was one of several rival gangs of Loco Park. The court instructed the jury on the limited use of gang evidence to establish motive, identity, and intent. (CALJIC No. 17.24.3.)[2]

Around 9:00 a.m. on August 10, 2019, Munoz was sleeping inside his wooden shed while Sodetani and another woman, Jasmin Alonso, prepared breakfast for 10 other people waiting in a nearby alleyway.[3] Defendant, known by Sodetani and Alonso as "Curly," and another unknown man were part of the group waiting for breakfast. About a minute after Alonso saw defendant and the other man walk by the wooden shed, she heard someone yell, "This is Loco Park. Fuck Chicken Wings" and the sound of several gunshots.[4] Everyone fled the area except Sodetani and Alonso, who ran back to Munoz. After locating Munoz in the wooden shed, Sodetani noticed he was bleeding profusely and convulsing. Sodetani called 911. According to a

---

[2]     CALJIC No. 17.24.3 provided in relevant part that evidence "showing criminal street gang activities of the defendant" could not be considered "to prove that defendant is a person of bad character or that he has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining a defendant's identity, intent, and motive. [¶] . . . [¶] You are not permitted to consider such evidence for any other purpose."

[3]     At the time of trial, Sodetani was transient and did not have a phone. Sodetani could not be located for trial despite diligent efforts to secure her attendance. Her preliminary hearing testimony was read to the jury.

[4]     According to Officer Heistirmann and Detective Calzadillas, "Chicken Wings" is a derogatory term used by rival gangs to disrespect Citywide Vandals.

deputy medical examiner, Munoz died from multiple gunshot wounds, four in total, to his upper legs and arm.

In a six-pack photographic lineup, Alonso identified defendant as the person who yelled, "This is Loco Park. Fuck Chicken Wings."

Defendant was arrested three days after the shooting and interviewed by Detective Calzadillas and his partner. In a recording of the interview played for the jury, defendant admitted he was a member of Loco Park and showed officers his gang tattoos. Defendant initially denied being near the shooting but later admitted to shooting Munoz.

Defendant discussed the shooting as follows. Defendant and his "little hom[ey]," Muerto, went to the alleyway to confront Munoz, known by defendant as "Rage," for jumping and beating up Muerto in a nearby location. Asked if Munoz was a member of Citywide Vandals who lived in the area, defendant replied, "Maybe." After arriving at Munoz's wooden shed with Muerto, defendant asked Munoz, "What's up with my homey, fool?" Munoz looked at both men and responded, "What's up with him?" Angered at Munoz's response, defendant pulled a gun from his waist and shot Munoz several times. Defendant denied Muerto had a gun during the shooting. After the shooting, defendant, Muerto, and another man discarded the firearm in the ocean.

According to Officer Heistirmann, the term "little hom[ey]" referred to a junior gang member. He also testified gang members are expected to retaliate against anyone who assaults a fellow gang member. Retaliation would "save face[ and] regain respect" in the community. A gang member would be viewed as weak if they did not retaliate. In various photographs taken of defendant, Detective Calzadillas identified tattoos associated

4

with Loco Park. Some of the gang tattoos were obtained after defendant shot Munoz.

**B.      Defense Evidence**

Defendant did not present any affirmative evidence in his defense.

**C.      Information, Verdicts, and Sentencing**

By amended information, defendant was charged with first degree premeditated murder (§§ 187, subd. (a), 189, subd. (a)), and felon in possession of a firearm (§ 29800, subd. (a)(1)). The information alleged various firearm enhancements (§ 12022.53, subds. (b)-(d)), and aggravating circumstances (Cal. Rules of Court, rule 4.421). Following trial in May 2023, a jury found defendant guilty as charged, found the murder to be first degree, and found all three firearm enhancement allegations true.

On August 16, 2023, defendant was sentenced to an overall term of 50 years to life.[5] Defendant timely appealed.

**DISCUSSION**

**A.      Additional Background**

The operative information did not charge defendant with a gang crime (§ 186.22, subd. (a)) or gang sentence enhancement allegation (§ 186.22, subd. (b)). Before trial, the prosecution informed the court of its intent to offer gang evidence to establish

---

[5]      The court sentenced defendant to 25 years to life for first degree murder and a consecutive term of 25 years to life under section 12022.53, subdivision (b). The court stayed sentences on the remaining firearm enhancements and imposed a concurrent middle-term sentence of two years for felon in possession of a firearm.

defendant's identity, motive, and intent.  In support, the prosecution discussed the statement calling out "Loco Park" and "Fuck Chicken Wings" before the shooting and Munoz's prior assault of a person affiliated with Loco Park.  Defendant objected to the gang evidence under Evidence Code section 352.  The court overruled defendant's objection, finding the evidence relevant to motive, identity, and intent; it also found the probative value of the gang evidence outweighed any prejudice to defendant.  In so ruling, the court noted it would give a limiting instruction on the use of gang evidence.  (See fn. 2, *ante*.)

## B.    Governing Principles

### 1.    *Admission of Relevant Evidence and Preliminary Facts*

"No evidence is admissible except relevant evidence." (Evid. Code, § 350; see § 1102 [rules of evidence apply in criminal actions].)  "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness . . . , having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, § 210.)  All relevant evidence is admissible "[e]xcept as otherwise provided by statute."  (*Id.*, § 351.)  Trial courts possess broad discretion to exclude relevant evidence if its probative value is substantially outweighed by the probability its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, confusion of the issues, or misleading the jury.  (*Id.*, § 352.)

If disputed by the parties, "preliminary facts"—those facts upon which the admissibility of evidence depends—are to be determined by the trial court outside the presence of the jury.

6

(Evid. Code, §§ 400–405.)  "Examples of preliminary fact issues to be decided" include lay and expert witness disqualification (*id.*, §§ 701, 720), evidentiary privileges (*id.*, §§ 900–1070), the hearsay rule and its exceptions (*id.*, §§ 1200–1341), and the best evidence rule (*id.*, §§ 1500–1510).  (Assem. Com. on Judiciary Comment to § 405.)

### 2.    *Admissibility of Gang Evidence*

"In cases *not* involving the gang enhancement statute," our Supreme Court has "held that evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal.  [Citation.]  But evidence of gang membership is often relevant to, and admissible regarding, the charged offense.  Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime.  [Citations.]  To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, . . . .  [Citation.]" (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049–1050; accord, *People v. Funes* (1994) 23 Cal.App.4th 1506, 1518 ["Cases have repeatedly held that it is proper to introduce evidence of gang affiliation and activity" on issues of motive and intent].)

Our Supreme Court has consistently upheld the admissibility and use of evidence concerning "a defendant's gang affiliation and activity if it is relevant to the charged offense." (*People v. Chhoun* (2021) 11 Cal.5th 1, 31–32 (*Chhoun*); see, e.g.,

7

*People v. Holmes, McClain & Newborn* (2022) 12 Cal.5th 719, 773 (*Holmes, McClain & Newborn*) [such evidence may be "highly relevant given the apparent gang-related motivation" for the crime]; *People v. Pineda* (2022) 13 Cal.5th 186, 236; *People v. Anh The Duong* (2020) 10 Cal.5th 36, 64–65 (*Anh The Duong*).)

Gang evidence is admissible "even when a gang enhancement is not charged, provided the probative value of the evidence is not substantially outweighed by its prejudicial effect." (*People v. Ramirez* (2022) 13 Cal.5th 997, 1095 (*Ramirez*), citing *People v. Williams* (1997) 16 Cal.4th 153, 193 (*Williams*).) For gang-motivated crimes, the probative value of gang evidence "'"generally exceeds its prejudicial effect, and wide latitude is permitted"'" in its admission. (*Chhoun*, *supra*, 11 Cal.5th at p. 32.)

### 3. *Standard of Review*

We generally review a trial court's evidentiary rulings for abuse of discretion. (*People v. Mataele* (2022) 13 Cal.5th 372, 413.) Under this standard, we shall not disturb the lower court's ruling absent a showing the court's ruling was arbitrary or capricious, resulting in a miscarriage of justice. (*Ibid.*) We review de novo questions of statutory construction and application. (*People v. Tran* (2015) 61 Cal.4th 1160, 1166.)

## C. Analysis

Defendant contends the trial court erred by admitting evidence the shooting and firearm possession "were connected to the activities of criminal street gangs without requiring the prosecution to prove that the groups fell within the definition of a

8

criminal street gang" under section 186.22.  We discern no error under any standard of review.

As defendant acknowledges, the prosecution's theory at trial "was that [he] was a member of the Loco Park gang, his membership fortifies his identification as the killer, prior to the shooting he used a phrase indicating hostility to Citywide Vandals, a rival gang, and that his motive and intent was to retaliate for violence against someone who presumably was a member of Loco Park."

The evidence supporting this theory was relevant and probative on defendant's motive, identity, and intent.  The rivalry established defendant's motive to retaliate against Munoz, an affiliate of a rival gang, for jumping Muerto, a "little homey" affiliated with Loco Park.  (Accord, *Williams*, *supra*, 16 Cal.4th at p. 194 ["the victim appeared to be a member of a gang which was a deadly rival of defendant's gang"]; *Anh The Duong*, *supra*, 10 Cal.5th at p. 65 [evidence "explained defendant's willingness to shoot a complete stranger minutes after a verbal spat"].)

The evidence also gave context to the shooting and defendant's identity.  Without the gang evidence, the jury would have no explanation for the statement, "This is Loco Park.  Fuck Chicken Wings," which preceded the shooting of Munoz.  (See *Holmes, McClain & Newborn*, *supra*, 12 Cal.5th at p. 747 [evidence provided context for gang-related statements "thank you, Blood" and "now Blood" that accompanied shootings]; *People v. McKinnon* (2011) 52 Cal.4th 610, 655 [same as to statement, "This is for Scotty," a Crip previously killed by a Bloods gang].)  The evidence also connected defendant to the person Alonso identified as "Curly" from Loco Park.

The trial court found the probative value of the gang evidence not substantially outweighed by the probability its admission would create a substantial danger of undue prejudice or confusion.  (Evid. Code, § 352.)  Defendant does not challenge the court's ruling under Evidence Code section 352 or the court's limiting instruction under CALJIC No. 17.24.3.  (See *People v. Franklin* (2016) 248 Cal.App.4th 938, 953 [we presume the jury followed the limiting instruction].)

Defendant argues the prosecution was prohibited from introducing any gang evidence absent proof both gangs (Loco Park and Citywide Vandals) satisfied the Penal Code definition of a criminal street gang as defined in section 186.22.  The Attorney General contends defendant forfeited this claim for failing to object on this basis or argue for the satisfaction of elements under section 186.22.  We agree.  (See *Homes, McClain & Newborn*, *supra*, 12 Cal.5th at p. 772.)  We also reject defendant's argument on the merits.

The only statute on which defendant relies, section 186.22, does not address the admissibility of gang evidence or the manner in which criminal proceedings are to be held.  Section 186.22 is substantive in nature, enacted as part of the California Street Terrorism Enforcement and Prevention Act, to eradicate criminal activity by street gangs.  (*People v. Valenzuela* (2019) 7 Cal.5th 415, 421.)  To this end, section 186.22 proscribes gang-related conduct through a substantive offense and sentencing enhancements attached to gang-related felonies.  (§ 186.22, subds. (a), (b)).  It does not purport to impose its definition of a criminal street gang in any other context.

Defendant was not charged under section 186.22.  Absent any charge, the prosecution was not required to prove the

10

existence of a "criminal street gang" as that term is defined under section 186.22.  (See *People v. Loy* (2011) 52 Cal.4th 46, 72 [prosecution must prove all elements of the charged crime beyond a reasonable doubt].)

To the extent defendant argues the existence of a "criminal street gang," as defined under section 186.22, is a preliminary fact that must be established before gang evidence is admitted, he furnishes no authority in support.  We need not undertake substantial analysis of the issue but note there are a number of instances in which preliminary fact issues must be decided under the Evidence Code.  Absent from these instances is the requirement that section 186.22's definition of a "criminal street gang" be met.  (See Assem. Com. on Judiciary Comment to § 405; see also Evid. Code, §§ 351.1, 351.4, 352.1–352.2 for additional restrictions on use of particular categories of evidence.)

Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 699), the other authority on which defendant relies, also furnishes no support for defendant's argument.  Assembly Bill No. 333 "made . . . changes to the law on gang enhancements." (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).)  The introductory language in the bill clarifies its aim to redefine the term "criminal street gang" as it then existed "[f]or purposes of the *enhancement*" in section 186.22.  (Assembly Bill No. 333, *supra*, introduction, italics added.)  The bill also added section 1109 to the Penal Code, "which requires, if requested by the defendant, a gang enhancement charge to be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime." (*Tran*, *supra*, at p. 1206.)  As this newly enacted section demonstrates, had the Legislature

11

intended to fashion a rule concerning the procedure for introducing gang evidence in criminal cases, it knew how to do so.

Defendant admits "[s]everal appellate cases have held that gang evidence may still be introduced without complying with the definition of criminal street gang in Penal Code section 186.22, if the gang evidence is relevant to an issue in the case." (Citing *Tran*, *supra*, 13 Cal.5th 1169, 1208; *Ramirez*, *supra*, 13 Cal.5th at pp. 1095–1096.) This admission is significant in two respects.

First, *Tran* and *Ramirez* are binding on this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Defendant provides no persuasive argument distinguishing the facts of those cases from those here. (See *People v. Diaz Martinez* (2020) 54 Cal.App.5th 885, 894 [holdings of Supreme Court must be applied wherever the facts of the cases are "'not fairly distinguishable'" from the facts at issue on appeal].)

Second, both decisions predate Assembly Bill No. 333 which, as discussed, contains no language on the admissibility or introduction of gang evidence. "'[W]hen as here "'a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.' [Citations.] ""'There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts.'"' [Citation.]" (*People v. Favor* (2012) 54 Cal.4th 868, 879.) Defendant supplies no argument rebutting this

presumption. Therefore, we conclude the court did not err in admitting the gang evidence in this case.[6]

## DISPOSITION

The judgment is affirmed.


MORI, J.

We concur:


CURREY, P. J.


COLLINS, J.

---

[6] In light of our conclusion, we do not address defendant's argument on harmless error.